## OSBORNE v. MISSOURI PACIFIC RAILWAY COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MISSOURI.

No. 95. Argued December 16, 19, 1892. — Decided January 16, 1893.

A bill was filed against a railroad company in Missouri by the owner of a building on a public street in St. Louis, on which the company was about, under competent municipal authority, to lay down tracks at grade for use in running cars drawn by steam power. The bill prayed to restrain and enjoin the company from commencing or carrying out the proposed construction, or from taking possession of the street for that purpose. The injuries to result to the complainant's building from the proposed construction were set forth, but without any demand for compensation other than that contained in the prayer for general relief. The statutes of Missouri provide for the assessment of compensation for the taking of property for public use, but not for such assessment where property is merely damaged. *Held*, that the complainant had an adequate remedy at law for the injuries complained of, and was not entitled to the relief prayed for.

This was a bill filed by D. M. Osborne & Company, a corporation of the State of New York, in the Circuit Court of the United States for the Eastern District of Missouri, against the Missouri Pacific Railway Company, February 16, 1887, alleging that the defendant was about to construct a track along Gratiot street, in the city of St. Louis, from its main tracks near Twenty-third street to the property of the St. Louis Wire Mill Company, near the corner of Twenty-first street, in front of a building on Gratiot and Twenty-second streets, owned and occupied by complainant, and of a vacant lot adjoining this building, which was also owned by complainant; and on which it intended to erect a building similar to the one then occupied by it; and that the track would be a permanent obstruction, and was to be laid for the private use and gain of the Wire Mill. It was further averred that Gratiot street was but twenty-four feet in width from curb to curb; that when the proposed building was completed accord-

ing to the original plan, there would be no entrance to the same on any street but Gratiot street; that by reason of the railroad tracks and the operation of the same, complainant and the public would be prevented from using the street as allowed by law; that travel would be diverted and turned away; that it would be impossible for a wagon and team to remain on Gratiot street in front of complainant's property, while cars were being moved or might be standing on the same; and that it would not be safe to use the street by teams and wagons; "to the great, unascertainable and irreparable damage of your orator's business." It was also alleged that the noise, smoke and danger from fire, and from the shaking and vibration of complainant's buildings, caused and occasioned by the passage of cars and locomotives in front of complainant's premises, would render them less desirable and valuable as a place of business to complainant; that all the damage threatened to be done complainant was irreparable in its nature, and it could not be fully compensated therefor in an action at law; and that the construction and operation of the railroad track would reduce the market value of the property and damage the same in a sum in excess of $30,000.

The prayer for relief was that the defendant "be restrained and enjoined from commencing or carrying out the proposed construction of any railroad track or switch, or from taking possession of said Gratiot street for said purpose, or from using said Gratiot street to the exclusion of your orator and the public; and for all such other and further relief as may be necessary and proper."

On October 8, 1887, the defendant filed its amended answer, specifically denying the allegations of complainant's bill, and averred that the track was laid, before the filing of the bill, in pursuance and by authority of an ordinance of the city of St. Louis, approved February 18, 1887, which ordinance was set out in full in the answer. Exceptions and demurrer were filed by the complainant to this answer and overruled. The opinion of the Circuit Court thereon will be found in 35 Fed. Rep. 84. The court held, upon the pleadings as they stood, that the complainant should be left to its remedy at law.

A replication was then filed and the cause came on for hearing January 31, 1889. It was stipulated that the track was laid March 20, 1887, some days after the bill was filed. Evidence was given on behalf of the complainant tending to show that the existence of the railroad track on Gratiot street lessened the value of complainant's property. The court declined to go into the question of the amount of the damages, and counsel for complainant disclaimed asking in this proceeding that the court should ascertain the amount and direct its payment.

The ordinance of the city council authorizing the construction of the track provided that the privilege of using it should be extended to other railroads by connecting their tracks with the switch, and that the track might be used to transport cars to and from the property of any other person or company owning property on Gratiot street and desiring such connection, if municipal authority and power were granted for the laying and operation of spur tracks thereto.

There was no evidence that the track was constructed in any other than the ordinary manner upon the surface of the street, without change of grade or other disturbance, but it did not appear to have been laid for the full distance in the centre of the street, but inclined to the north and made a curved line at the west boundary of complainant's premises. There was no evidence of improper or unskilful construction or operation of the railroad, and there was evidence that, before and after the construction, complainant used continuously for receiving goods the Twenty-second street entrance to its building. It was also shown that the track was used by the defendant in a reasonable and proper manner and at reasonable hours, and there was a conflict of testimony as to whether the value of complainant's property had been enhanced or lessened by reason of the construction of the track. The court directed the bill to be dismissed without prejudice to complainant's right to sue at law for the damages which it claimed to have suffered, and a decree to that effect was accordingly entered, from which an appeal was prosecuted to this court. The opinion is reported in 37 Fed. Rep. 830.

Section 21 of Article II of the Missouri constitution of 1875 provides: "That private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law; and until the same shall be paid to the owner, or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested. The fee of land taken for railroad tracks without the consent of the owner thereof, shall remain in such owner, subject to the use for which it is taken."

Section 765 of the Revised Statutes of Missouri of 1879, being one of the sections of Article II of chapter 21, relating to railroad companies, reads: "Every corporation formed under this article shall, in addition to the powers hereinbefore conferred, have power . . . to construct its road across, along or upon any stream of water, water course, street, highway, plank road, turnpike or canal which the route of its road shall intersect or touch; but the company shall restore the stream, water course, street, highway, plank road and turnpike thus intersected or touched to its former state, or to such state as not unnecessarily to have impaired its usefulness. Nothing herein contained shall be construed to authorize the . . . construction of any railroad not already located in, upon or across any street in a city or road of any county, without the assent of the corporate authorities of said city, or the county court of such county."

By subdivision 11 of section 4417 of the Revised Statutes of 1879, in Article II of chapter 89 in relation to cities, towns and villages, it is provided that cities shall have "sole power and authority to grant to persons or corporations the right to construct railways in the city, subject to the right to amend, alter or repeal any such grant, in whole or in part."

*Mr. P. R. Flitcraft,* (with whom were *Mr. J. E. McKeighan* and *Mr. H. E. Mills* on the brief,) for appellant.

I. The constitution of Missouri requires compensation to be paid in advance to owners for such damages to property as

were previously considered consequential, and included therein damages to property caused by construction of steam railroads in streets. *Rude* v. *St. Louis*, 93 Missouri, 408; *Chicago* v. *Taylor*, 125 U. S. 161; *Chicago &c. Railroad* v. *Ayres*, 106 Illinois, 511; followed in many cases, the last of which is *Lake Erie & Western Railroad* v. *Scott*, 132 Illinois, 429; *Johnson* v. *Parkersburg*, 16 West Virginia, 402; *Spencer* v. *Point Pleasant Railroad*, 23 West Virginia, 406; *Reading* v. *Althouse*, 93 Penn. St. 400; *Pusey* v. *Allegheny*, 98 Penn. St. 522; *Pittsburgh &c. Railway* v. *Vance*, 115 Penn. St. 325; *Auman* v. *Philadelphia &c. Railroad*, 133 Penn. St. 93; *Hot Springs Railroad* v. *Williamson*, 45 Arkansas, 429; *Columbus & Western Railway* v. *Witherow*, 82 Alabama, 195; *Gottschalk* v. *Chicago, Burlington & Quincy Railroad*, 14 Nebraska, 550; *Julia Building Association* v. *Bell Telephone Co.*, 88 Missouri, 258; *Story* v. *New York Elevated Railroad*, 90 N. Y. 122; *Abendroth* v. *Manhattan Railway*, 122 N. Y. 1; *Kane* v. *New York Elevated Railroad*, 125 N. Y. 164; *Mollandin* v. *Union Pacific Railway*, 14 Fed. Rep. 394; *Frankle* v. *Jackson*, 30 Fed. Rep. 398; *Gulf, Colorado &c. Railway* v. *Fuller*, 63 Texas, 467; *Atlanta* v. *Green*, 67 Georgia, 386; *Weyl* v. *Sonoma Valley Railroad*, 69 California, 202.

II. The owner of an abutting lot has a special interest in the street, distinct in kind, and in addition to that enjoyed by the public in general. Interference with the right of ingress and egress, light, air, access by customers, by teams and vehicles, and the use of the enjoyment of the street, is a damage peculiar to the owner, and protected by the Constitution. *Rude* v. *St. Louis*, 93 Missouri, 408; *Pittsburgh &c. Railway* v. *Vance*, 115 Penn. St. 325; *Lackland* v. *North Missouri Railroad*, 31 Missouri, 180; *S. C.* 34 Missouri, 259.

III. Where buildings have been erected, adapted to a particular purpose, and a public improvement is made, which injuriously affects the property and reduces its market value, such a damage is for public use, and requires compensation to be made. *Chicago* v. *Taylor*, 125 U. S. 161; *Calumet River Railway* v. *Moore*, 124 Illinois, 329; *Chicago, Burlington & Northern Railroad* v. *Bowman*, 122 Illinois, 595; *Dupuis* v.

*Chicago &c. Railway,* 115 Illinois, 97 ; *Atchinson Railroad* v. *Schneider,* 127 Illinois, 144 ; *Pittsburgh &c. Railway* v. *Vance,* 115 Penn. St. 325.

IV. Damage caused by dust, smoke, etc. are elements of damage to be considered. *Gainesville &c. Railway* v. *Hall,* 78 Texas, 169 ; *Chicago &c. Railroad* v. *Loeb,* 118 Illinois, 208.

V. The proper remedy is an injunction. *Carpenter* v. *Grishan,* 59 Missouri, 247 ; *McPike* v. *West,* 71 Missouri, 199 ; *McElroy* v. *Kansas City,* 21 Fed. Rep. 257 ; *Columbus & Western Railway* v. *Witherow,* 82 Alabama, 190 ; *Weyl* v. *Sonoma Valley Railroad,* 69 California, 202 ; *Macon* v. *Harris,* 75 Georgia, 761 ; *Terre Haute &c. Railroad* v. *Rodel,* 89 Indiana, 128 ; *Harrington* v. *St. Paul &c. Railroad,* 17 Minnesota, 215 ; *Wagner* v. *Railway Co.,* 38 Ohio St. 32 ; *Appeal of the Borough of Verona,* 108 Penn. St. 83 ; *Pennsylvania Railroad* v. *Angel,* 41 N. J. Eq. (14 Stewart,) 316 ; *Chicago, St. Louis &c. Railroad* v. *Gates,* 120 Illinois, 86.

*Mr. John F. Dillon,* (with whom was *Mr. Winslow F. Pierce* on the brief,) for appellee.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

We assume upon this record that the complainant was an abutting owner merely, and that the fee of the street was in the municipality for the public, or in the public ; that the construction of the tracks was duly authorized ; that they were laid with due care and skill and in strict accordance with the authority granted ; and that the road was properly operated. And the terms of the ordinance were such in relation to other persons and companies than the Mill Company, and to other railroads than this, that it is not open to the objection that it empowered a construction exclusively for private use.

The contention of complainant is that it was entitled, under section 21, Article II of the state constitution, to compensation for the damage it alleged it had sustained, and that the com-

pany should have been enjoined from the operation of its road because such compensation had not been paid..

In *Chicago* v. *Taylor*, 125 U. S. 161, which was an action in trespass on the case, the provision of the constitution of the State of Illinois, adopted in 1870, that "private property shall not be taken or damaged for public use without just compensation," came under consideration in this court, and it was ruled, in concurrence with the interpretation placed upon that language by the Supreme Court of the State, that a recovery might be had wherever private property had sustained a substantial injury from the making and use of an improvement that was public in its character, whether the damage was the direct result of a physical invasion of the thing owned, or of the injurious disturbance of its user and enjoyment, as in a diminution of its market value. The same conclusion was reached in *Rigney* v. *City of Chicago*, 102 Illinois, 64, where, among other things, it was said: "In all cases, to warrant a recovery it must appear there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally." Many decisions under similar constitutional provisions are to the same effect. *Reading* v. *Althouse*, 93 Penn. St. 400; *Pittsburgh &c. Railway* v. *Vance*, 115 Penn. St. 325; *Auman* v. *Philadelphia &c. Railroad*, 133 Penn. St. 93; *Hot Springs Railroad* v. *Williamson*, 45 Arkansas, 429; *Columbus & Western Railway* v. *Witherow*, 82 Alabama, 195; *Gottschalk* v. *Chicago, Burlington &c. Railroad*, 14 Nebraska, 550; *Spencer* v. *Point Pleasant Railroad*, 23 W. Va. 406.

It is insisted, however, that the settled rule of decision of the highest tribunal of Missouri is that the construction and operation of a steam railroad track in the ordinary way upon the streets of a municipality is a legitimate use of the street, and does not impose a new burden or servitude, and that the injury which owners of abutting property may suffer, by reason of such construction and operation, is not of a nature for which

compensation is demandable under the constitutional provision in question.

In *Julia Building Association* v. *Bell Telephone Co.*, 88 Missouri, 258, a bill for an injunction was filed by an abutting land owner to restrain the erection and maintenance of telephone poles and wires on the sidewalk. The bill was dismissed and the judgment affirmed at October term, 1885, of the Supreme Court, the court holding that when the public acquires a street in a city, either by condemnation, grant or dedication, it may be applied to all purposes consistent with the proper use of a street; that it is only when the street is subjected to a new servitude, inconsistent with and subversive of its proper use, that the abutting land owner can complain; that the erection and maintenance of defendants' poles were a proper use of the street; that it seemed that the owner of adjoining premises could not claim compensation for damages resulting from such use; and in no event would compensation be allowed for speculative or contingent damages, although recovery could be had for injuries resulting from the unskilful and negligent conduct of the work. And it was observed in the prevailing opinion that " railroads operated by steam, are permissible, because such methods of transportation and travel are among those to which the street may be properly applied, as not being inconsistent with its free and unrestricted use."

The court was not unanimous, and it is said by counsel that the dissenting opinion is the better law, and that the allusion to railroads in streets was an *obiter dictum ;* but in the recent case of *Henry Gauss & Sons Manuf'g Co.* v. *St. Louis, Keokuk & Northwestern Railway*, decided December 13, 1892, 20 S. W. Rep. 658, the precise question was passed upon. This was a suit to enjoin the defendant from laying a track and operating a railroad laterally along Main Street, in the city of St. Louis, in front of plaintiff's property, until compensation for damage thereto should be ascertained and paid. A preliminary injunction, which was granted at the commencement of the suit, was dissolved, and the road had been built and was in use when the cause was tried. The petition charged

that the plaintiff owned an entire block fronting on Main Street, and had thereon a two-story and basement factory, erected for the special purpose and adapted by its construction for use as a planing mill, sash, door and box factory, and was used as such; that the building fronted on Main Street, and was so constructed that the only front that was adapted for receiving and shipping lumber from the street was the Main Street front; that the defendant threatened and was about to occupy the street by laying and operating by steam a railway with double tracks, thereby permanently obstructing the street, and not leaving space between the tracks and the building sufficient to permit of the standing of wagons and other vehicles, without constant danger of collision with engines and cars passing to and fro over the tracks, and wholly destroying the use of the street as a thoroughfare. The damage to the property as charged consisted of the prevention of the free ingress and egress to and from the street; noise and smoke; damage from fires; shaking and vibration of the building; all caused by the passage of engines and cars over the street in proximity to the premises.

The court was satisfied that the plaintiff's property had been depreciated somewhat in value by reason of the construction and operation of the railroad, and the inquiry was whether the damages thus inflicted were such as were contemplated by section 21 of Article II of the state constitution. It was not claimed by plaintiff that there was any physical injury done to its property or that its possession was disturbed; and it was shown that the street was dedicated without restriction to general use as a highway; that the defendant was authorized by the charter and ordinance of the city to lay its tracks along the street and to operate thereon; and that the track was laid on the established grade of the street, and constructed in a careful and skilful manner, and in strict compliance with the requirements of the ordinance. It was conceded by the court that every owner of a lot abutting on a public street, besides the ownership of the property itself, had rights appurtenant thereto, which formed a part of the estate, among which might be named an easement for the free admis-

sion of light and pure air, and the right of ingress and egress to and from the property; that the interest of the lot owner in the adjacent street was a peculiar interest, which neither the local nor the general public could pretend to claim; a private right in the nature of an incorporeal hereditament legally attached to the contiguous ground; an incidental title to certain facilities and franchises which was in the nature of property, and which could no more be appropriated against the owner's will than any tangible property of which he might be the owner. And it was held that depriving the owner of these incorporeal hereditaments by interfering with their full enjoyment in the appropriation of the street to a new and different public use than that originally contemplated, would undoubtedly be a damage within the constitutional provision; but the court was of opinion that the laying of a railroad track in the street, on grade, and operating the road in the usual manner, was not applying the street to a new public use which required the payment of compensation for damage to the property; that when land is dedicated generally, and without restrictions, or condemned for a public street in a town or city, the owner of the abutting lots who secures the benefit of the street, and persons also who purchase and improve property thereon, hold their property rights subject to all the uses to which the street could be lawfully subjected by the public; and after quoting with approval from the majority opinion in *Julia Building Company* v. *Telephone Company*, the court said: " There has been great diversity of opinion among the courts of this country as to whether, though under proper legislative authority, laying a track on the established grade, and operating a steam railroad thereon, in the transaction of commercial business, along a street, is subjecting the street to a public use not contemplated in a general grant or dedication. Whatever the rule may be elsewhere, this court has been uniform in holding that such a use is not a perversion of the highway from its original purposes. *Lackland* v. *Railroad*, 31 Missouri, 180; *Porter* v. *Railway*, 33 Missouri, 128; *Cross* v. *Railway*, 77 Missouri, 321; *Julia Bldg. Association case, supra; Smith* v. *Railway*, 98

Missouri, 24; *Railway* v. *Railway*, 97 Missouri, 469; *Rude* v. *St. Louis*, 93 Missouri, 414. . . . It appears from the evidence that the only substantial damage which was special to plaintiff and not common to the public, shown by it, consisted in the interference with its free access from the street to its factory; the obstruction of the light and air across the open street; smoke, cinders and dust from engine and cars; noise and jarring of the ground; all caused by the movement of trains. These may cause damage to and depreciation of the value of the property, but the damage results from a legitimate use of the street, and which might have been anticipated by plaintiff as a probable use when it bought its property and erected its improvements." And it was concluded that, while for any damages that might be caused by the unlawful or negligent maintenance of the tracks in the street, or by negligent use of engines or movement of trains, defendant would be liable in an action to recover them, plaintiff had shown no ground for injunction. This decision, although rendered some years after the entry of the decree under review, must be regarded as an authoritative exposition of the previous judgments of that court upon the same subject.

As a general rule, this court follows the decisions of the highest tribunals of a State, upon the construction of its constitution and laws, if they do not conflict with or impair the efficacy of some provision of the Federal Constitution, or of a Federal statute; but we are not required to express an opinion as to the applicability of that rule in this case, as the decree must be affirmed on other grounds.

Whenever the power of eminent domain is about to be exercised without compliance with the conditions upon which the authority for its exercise depends, courts of equity are not curious in analyzing the grounds upon which they rest their interposition.

Equitable jurisdiction may be invoked in view of the inadequacy of the legal remedy where the injury is destructive or of a continuous character or irreparable in its nature; and the appropriation of private property to public use, under color of law, but in fact without authority, is such an invasion of

private rights as may be assumed to be essentially irremediable, if, indeed, relief may not be awarded *ex debito justitiæ.*

But where there is no direct taking of the estate itself, in whole or in part, and the injury complained of is the infliction of damage in respect to the complete enjoyment thereof, a court of equity must be satisfied that the threatened damage is substantial and the remedy at law in fact inadequate before restraint will be laid upon the progress of a public work. And if the case made discloses only a legal right to recover damages rather than to demand compensation, the court will decline to interfere.

In *McElroy* v. *Kansas City,* 21 Fed. Rep. 257, which was an application for an injunction to restrain the grading of a street in front of the complainant's lot, Mr. Justice Brewer, then Circuit Judge, considered under what circumstances a chancellor could grant such relief. It was ruled that, if the injury which the complainant would sustain from the act sought to be enjoined could be fully and easily compensated at law, while, on the other hand, the defendant would suffer great damage, and especially if the public would suffer large inconvenience, if the contemplated act were restrained, the injunction should be refused, and the complainant remitted to his action for damages. If the defendant had an ultimate right to do the act sought to be restrained, but only upon some condition precedent, and compliance with the condition was within the power of the defendant, the injunction would almost universally be granted until the condition was complied with; but if the means of complying with the condition were not at defendant's command, then the court would adjust its order so as to give complainant the substantial benefit of the condition, while not restraining defendant from the exercise of its ultimate rights. Inasmuch as, while the statutes of Missouri provided for the assessment of damages resulting from the taking of property for public use, there existed no provision to attain that result where the property was merely damaged, an injunction was granted, with leave to the defendant to apply for the appointment of a board of commissioners to ascertain and report the damages which complainant would

sustain, upon payment of which the injunction would be vacated.

Assuming, as the Circuit Court did, and as we prefer to do in disposing of the case upon this record, that if the complainant had sustained damage, it had a cause of action, we, nevertheless, entirely agree that the bill was properly dismissed.

Evidence was adduced of the extent and character of the alleged damage, although the Circuit Court did not undertake to go into the question of amount, and the result was that the court concluded that the use of the track had not seriously obstructed, and would not in future seriously obstruct, access to complainant's premises, and that the lessening of the market or rental value of the property was in any event small; that a jury might find that no damage had been sustained or that it was inconsiderable; and that there was no proceeding which defendant could take to obtain an assessment of damages, if any, while the complainant had an adequate and simple remedy by an action at law.

The prayer was for an unconditional injunction, and although this was coupled with a prayer for general relief, a decree different from that specifically prayed could hardly have been awarded under the general prayer, as the averments of the bill were not introduced for that purpose; and besides, the complainant explicitly disclaimed upon the hearing any desire for the ascertainment of damages in this proceeding.

The statutes of Missouri provided for the assessment of compensation for the taking of property for public use, but not for such assessment where property was merely damaged, and complainant occupied the position of seeking by an absolute injunction to compel the defendant to pay such amount as accorded with its own judgment upon that matter. It may be that if this had been a case where compensation as such was demandable, the defendant, by filing a cross-bill, could have obtained an order such as was entered in *McElroy* v. *Kansas City,* but it is useless to indulge in speculation in this regard.

We are satisfied that complainant was not entitled to the relief prayed, and the decree of the Circuit Court is accordingly

*Affirmed.*