## McCLEERY et al. v. HIGHLAND BOY GOLD MIN. CO.

(Circuit Court, D. Utah.  June 10, 1904.)

No. 573.

1. INJUNCTION—PROTECTION OF PROPERTY FROM INJURY—RELATIVE VALUE OF INTERESTS INVOLVED.

Where the use made of its property by a defendant causes a substantial and continuous injury to the property of complainant, the right of complainant to protection in equity by injunction is not affected by the fact that defendant has large capital invested in its business, while the value of complainant's property is comparatively small.

2. SAME—DELAY CREATING ESTOPPEL—ALTERNATIVE RELIEF.

Defendant built and operated a large smelter, the dust and vapors from which caused material injury to the trees, vegetation, and crops on the farms of complainants, who for several years, however, made no attempt to enjoin the continuance of the wrong, although they brought actions for damages, and during such time defendant largely increased the capacity and value of its plant. *Held* that, while complainants were entitled to protection in equity, in view of their delay in applying for an injunction it would only be granted on condition of defendant's refusal to pay the damages suffered by complainants in the past and not compensated for, and such as would result from the continued operation of the smelter in perpetuity, as the same should be determined by the court.

In Equity.  Suit for injunction.

Henderson, Pierce, Critchlow & Barrette, for complainants.

Sytherland, Van Cott & Allison, for defendant.

MARSHALL, District Judge.  This suit was instituted by David McCleery, suing in behalf of himself and all others similarly situated. Subsequently, by leave of court, John Evans, Feargus Lester, Andrew Swenson, and Matilda Swenson, his wife, were permitted to join as plaintiffs.  The complainants are each owners of separate farms situated in Salt Lake county, Utah, in the vicinity of the Highland Boy Gold Mining Company's smelter.  The defendant is the owner of a mine and of a large smelter, in which the ores of the mine are smelted. The ores treated are sulphide in character and in the process of smelting sulphur dioxide fumes are generated and escape.  When moisture is added to this sulphur dioxide, it becomes sulphurous or sulphuric acid, and when, by reason of becoming cool, it falls to the ground, it is injurious to growing vegetation.  It is also claimed that dust escapes from the stack of the smelter in such quantities as to injure vegetation and as to be injurious to stock fed on hay on which the dust may have settled.  The fumes and dust expelled from the defendant's smelter fall to some extent upon the land of the complainants and inflict substantial damage.  The defendant has invested in its smelter approximately $500,000, employs in the work about 450 men,

and treats approximately 500 tons of crude ore per day. The escape of the fumes and dust are necessarily incident to the smelting and not due to any negligence. The object of this suit is to enjoin the continuation of the smelting operations.

The title of the complainants to their respective farms is admitted. The substantial invasion of their rights to some extent and the purpose to continue this invasion is also admitted. It is, however, contended by the defendant that the injuries inflicted are to the trees and other vegetation, and not to the substance of the land, so as to render it infertile after the nuisance has permanently ceased. This contention may be assumed to be correct for the present purposes, but without any expression of opinion as to the weight of the evidence on this issue. It follows, however, from the admitted facts, that, if equitable relief be denied, plaintiffs will be remitted to a multiplicity of actions at law, and that this case falls clearly within the class in in which equity grants relief by a prevention of the continuing wrong. The substantial contention of the defendant is that it is engaged in a business of such extent and involving such a large capital that the value of the plaintiffs' rights sought to be protected is relatively small, and that therefore an injunction, destroying the defendant's business, would inflict a much greater injury on it than it would confer benefit upon the plaintiffs. Under such circumstances, it is asserted, courts of equity refuse to protect legal rights by injunction and remit the injured party to the partial relief to be obtained in actions at law. Stated in another way, the claim in effect is that one wrongfully invading the legal rights of his neighbor will be permitted by a court of equity to continue the wrong indefinitely on condition that he invests sufficient capital in the undertaking.

I am unable to accede to this statement of the law. If correct, the property of the poor is held by uncertain tenure, and the constitutional provisions forbidding the taking of property for private use would be of no avail. As a substitute it would be declared that private property is held on the condition that it may be taken by any person who can make a more profitable use of it, provided that such person shall be answerable in damage to the former owner for his injury. In a state of society the rights of the individual must to some extent be sacrificed to the rights of the social body; but this does not warrant the forcible taking of property from a man of small means to give it to the wealthy man, on the ground that the public will be indirectly advantaged by the greater activity of the capitalist. Public policy, I think, is more concerned in the protection of individual rights than in the profits to inure to individuals by the invasion of those rights. As said by Judge Sawyer in Woodruff v. North Bloomfield Gravel Mining Co. (C. C.) 18 Fed. 753, 807:

"Of course, great interests should not be overthrown on trifling or frivolous grounds, as where the maxim 'de minimis non curat lex' is applicable; but every substantial, material right of person or property is entitled to protection against all the world. It is by protecting the most humble in his small estate against the encroachments of large capital and large interests that the poor man is ultimately enabled to become a capitalist himself. If the smaller interest must yield to the larger, all small property rights, and all smaller and less important enterprises, industries, and pursuits, would sooner or later be

absorbed by the large, more powerful, few; and their development to a condition of great value and importance, both to the individual and the public, would be arrested in its incipiency."

While I recognize a conflict of authority upon this question, I think the better considered cases support the conclusion here reached. Woodruff v. North Bloomfield Grav. Min. Co. (C. C.) 18 Fed. 753; Shelfer v. City of London [1895] 1 Ch. 287; Imperial Gas Light & Coke Co. v. Broadbent, 7 H. L. C. 660, 672; Cowper v. Laidler [1903] 2 Ch. 327; Corning v. Troy I. & N. Factory, 40 N. Y. 191. If it be said that an owner of property may refuse to sell unless he gets a fancy price, and in this way use his injunction for purposes of extortion, that is but saying that he has the rights of the ordinary owner of property to sell at what price he pleases, or to refuse to sell if he so desires. It is also true, as said by Lord Wensleydale in St. Helen's Smelting Co. v. Tipping, 11 H. L. C. 652:

"The defendants say: 'If you do not mind, you will stop the progress of works of this description.' I agree that it is so, because, no doubt, in the county of Lancaster above all other counties, where great works have been created and carried on, and are the means of developing the national wealth, you must not stand on extreme rights and allow a person to say: 'I will bring an action against you for this and that, and so on.' Business could not go on if that were so. Everything must be looked at from a reasonable point of view. Therefore the law does not regard trifling and small inconveniences, but only regards sensible inconveniences, injuries which sensibly diminish the comfort, enjoyment, or value of the property which is affected."

In the case here presented the injury is not trifling, but substantial, and is only small when compared with the large sum invested in defendant's enterprise. The controversy is to be considered on the theory that the defendant has no power to condemn the right to continue the injury. It has made no attempt, nor shown any inclination, to condemn this right, and it is unnecessary to express any opinion as to the existence of the power. It does not follow, however, that an unconditional injunction must issue. In the bill it is alleged:

"The said defendant has, * * * and the said defendant claims to have, the right to acquire all lands necessary for its use for its smelter site; and although this complainant and others have offered to sell to said defendant corporation the said lands which are being destroyed by the operations thereof at their market value, yet said defendant has refused and still refuses either to exercise its said right to acquire said lands through eminent domain or to purchase them by private sale."

And, as alternative relief, it is prayed:

"And if the facts and circumstances be such as to warrant your honors in granting said relief, that the said defendant be compelled to exercise the right of eminent domain accorded by the laws of the state of Utah, and be compelled to acquire by due course of law the title and right of possession of the land and premises belonging to your orator as premises reasonably necessary for the continued use and operation of its said smelter plant; your orator hereby offering to permit the acquisition of said premises under said right of eminent domain."

If the injuries inflicted by the defendant are to be regarded as a taking, the defendant does not take the entire land, but simply an easement to discharge dust and vapors containing sulphurous and sulphuric acid on it. The injury so inflicted does not deprive the

complainants' land of all value for farming, and, perhaps, does not extend to the entire tracts of land. The offer to submit to condemnation must, then, be considered as a consent that full damage for a perpetual easement to continue the discharge of fumes and dust on complainants' land be assessed in one action in lieu of an injunction. The right in this case, however, to assess the damage and to order an injunction only in case the damage be not paid, does not depend on the consent of the complainants.

The defendant commenced to operate its smelter in June, 1899. The complainant McCleery alleges affirmatively that he recognized the injurious effects from this operation as early as the summer or fall of 1900, although he did not then fully appreciate the extent of the injury; that he left the state of Utah in the spring of 1901, and did not return until January, 1903. This suit was instituted June 24, 1903. With respect to the other complainants no effort is made to excuse the delay in bringing the suit. It appears that during this period the defendant greatly increased the capacity of its smelter, and commenced to operate at the increased capacity in January, 1901. The absence of McCleery from the state is no excuse for the delay. Before he left he recognized the existence of the nuisance. He must be held to have kept in such touch with his property as to have known of the subsequent aggravation of the injury. If he did not in fact have this knowledge, it was because he did not exercise the care usual with owners of property under circumstances advising them of the need of watchfulness No attempt was made by any of the complainants to enjoin the continuance of the wrong until May 12, 1902. The damage suits theretofore brought did not notify the defendant that a cessation of the operation of the smelter would be demanded. They rather induced the expectation that its operation would be permitted on condition of the payment of damage. Under those circumstances, even where admittedly there is no right of condemnation, damages may be assessed by a court of equity and an injunction ordered only upon the failure of the defendant to pay the damage. The defendant is, of course, not required to pay the damage assessed, but, if it fails to do so, must submit to an injunction. The rule rests on the theory that the time at which a party applies to the court of equity affects the character of relief to be granted. The rule is declared by the Supreme Court of the United States in New York City v. Pine, 185 U. S. 93, 22 Sup. Ct. 592, 46 L. Ed. 820, a case involving the principles here in question, and needs no further elaboration. See also Pappenheim v. Metropolitan Elevated Ry. Co., 128 N. Y. 436, 28 N. E. 518, 13 L. R. A. 401, 26 Am. St. Rep. 486; Jackson v. Stevenson, 156 Mass. 496, 31 N. E. 691, 32 Am. St. Rep. 476; Osborne v. Missouri Pac. Ry. Co., 147 U. S. 248, 13 Sup. Ct. 299, 37 L. Ed. 155.

The complainants Andrew Swenson and wife have no right to an injunction, for they have released the defendant from any liability by reason of the operation of the smelter prior to January 1, 1904. As to them the bill is dismissed. With respect to the other complainants the case will be referred to the master to ascertain and report to the court the damage heretofore suffered by the respective complainants by reason of the operation of the smelter and for which they have not

heretofore been compensated or recovered judgment, and the damage they will in the future so suffer by a perpetual operation of the smelter to the capacity its operation is now contemplated; that is, the amount the right to continue the operation will decrease the present market value of complainants' land. If within 30 days after the final assess-- ment of this damage, and upon tender to the defendant of proper in- struments on the part of the complainants granting the right to con- tinue the operation of the smelter, the defendant shall fail to pay the damage so ascertained, an injunction will issue. If, however, the de- fendant makes such payment, the bill will be dismissed.