## CUBBINS v. MISSISSIPPI RIVER COMMISSION et al.

### (District Court, E. D. Arkansas, E. D.   April 9, 1913.)

### No. 317.

1. DRAINS (§ 1*)—LEVEES (§ 1*)—POWER OF STATES TO ESTABLISH.

Under the police power of the state, when deemed necessary for the general welfare of its people, for the protection of health and property, every sovereign state has the power to construct and maintain levees, and provide for the drainage of swamps.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 1; Dec. Dig. § 1;* Levees, Cent. Dig. § 1; Dec. Dig. § 1.*]

2. EMINENT DOMAIN (§ 276*)—SUIT TO RESTRAIN MAINTENANCE OF LEVEE— SUFFICIENCY OF BILL.

A bill filed against the National Mississippi River Commission and the various levee boards in the several states having shore lands on the lower Mississippi, alleging that complainant is the owner of land in the valley of the river which was formerly above the reach of the flood waters, but that defendants, by the construction of levees, have so confined the waters of the river as to cause them in flood times to frequently overflow his land, interfere with its use and depreciate its value, does not state a cause of action which entitles complainant to an injunction to

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

restrain the maintenance or improvement of such levees, his remedy if his land is so taken or injured as to entitle him to compensation being by an action at law against all or any number of the defendants as joint tort-feasors.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 774; Dec. Dig. § 276.*]

3. EMINENT DOMAIN (§ 288*)—INJUNCTION—LACHES—PREJUDICE FROM DELAY.
Where such bill also shows that complainant has owned his land for 30 years, during which time millions of dollars have been expended on the levees without objection on his part, it discloses such laches as will prevent a court of equity from granting him relief and estop him from claiming it.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 783–788; Dec. Dig. § 288.*]

4. INJUNCTION (§ 24*)—DEFENSES TO RELIEF—INJURY TO PUBLIC.
Injunctions are not matters of right, but of judicial discretion, and if it appears that the granting of an injunction, although complainant might otherwise be entitled to it, would inflict such great damage on the defendants or the public that the injury suffered by complainant if the injunction is refused will be relatively insignificant, it should not be granted.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 23; Dec. Dig. § 24.*]

5. LIMITATION OF ACTIONS (§ 55*)—ACCRUAL OF CAUSE OF ACTION—NUISANCE.
Whenever a nuisance is of a permanent character, and its construction and continuance is necessarily injurious, the damage is original, and may be at once fully compensated, and in such case limitation begins to run against an action for relief from the construction of the nuisance.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 299–306; Dec. Dig. § 55.*]

6. EMINENT DOMAIN (§ 2*)—FLOODING OF LAND BY CONSTRUCTION OF LEVEE—RIGHT TO COMPENSATION.
Where a levee built by public authority to protect lands from overflow of the waters of a stream in flood times causes injury to land lying between the levee and the stream by raising the level of the water in time of flood, the damage is consequential, and the flooding does not amount to a taking of the land in a constitutional sense.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 3–12; Dec. Dig. § 2.*]

In Equity. Suit by John F. Cubbins against the Mississippi River Commission and others. On demurrer to bill. Demurrer sustained.

The complainant seeks by this bill to enjoin the Mississippi River Commission, created by an act of Congress, and also the commissioners of all the levee boards in the states of Missouri, Arkansas, Tennessee, Mississippi, and Louisiana, from maintaining and repairing, as will be more fully set out hereafter, the levees along the banks on both sides of the Mississippi river which have been constructed by the different levee districts of these states, aided by the Mississippi River Commission under acts of Congress.

The bill alleges that the plaintiff is the owner of certain property situated in the county of Shelby, state of Tennessee, exceeding in value the sum of $3,000; that the alluvial valley of the Mississippi river extends from Cape Girardeau in the state of Missouri on both banks to the Gulf of Mexico, varying in width from 4 to 40 miles; that from time immemorial the waters of the Mississippi river during the high stages thereof, when not contained within the low water banks of the river, found outlet below Cairo, Ill., into the St. Francis river basin in the state of Arkansas, into the White

river, Yazoo, Tensas, Atchafalaya, and Pontchartrain basins, and through the rivers draining these basins eventually into the Gulf of Mexico; that prior to the construction of the levees and the closing of the natural basins by the defendants the lands of the plaintiff were from 3 to 10 feet above the highest flood water of the Mississippi river, and the flood waters of that river did not overflow his lands nor interfere with the use and occupancy thereof, and that the outlets and drains provided by nature through the basins aforementioned were sufficient to carry off the waters, and prevent plaintiff's lands from being injured by overflow; that in about the year 1883 the officers and agents of the United States adopted the Eads plan for the improvement of the navigation of the Mississippi river, and the defendant, the Mississippi River Commission, acting in association with the other levee boards made defendants in this bill, and contractors, constructed, maintained, enlarged, and repaired, and are now engaged in the same work, levees on both sides of said river from Cairo, Ill., to near the head of the passes to the Gulf, a distance of 1,050 miles; that since 1883 this work has been under the direct supervision and control of the Mississippi River Commission; that the lines of levees so constructed, maintained, enlarged, and repaired have been joined by the defendants into a continuous line as contemplated by the Eads plan, so that the Mississippi river is now practically leveed on both sides; that the result of these acts has been that the flood waters of the Mississippi river are confined within and between said levee lines and the hills on the eastern bank, where there are no levees, and encompassed within a narrower high-water channel than heretofore; that by reason thereof the said waters have acquired an increased velocity and higher elevation of more than 6 feet, and that such velocity and elevation are being further increased, and the current is becoming stronger and more forceful; that in June, 1910, the grade established for levees by the Mississippi River Commission and used by the defendants was from 2 to 5 feet higher than the highest known water; that since that time the grade has been changed and increased to 3 to 5 feet above the highest known water, and the levees enlarged accordingly; that even such increased grade has proved to be insufficient to retain the flood waters of the Mississippi river for the purposes of the defendants, and that in the year 1912 the said waters flowed over the said lines of levees, and broke through the same in various and numerous places; that the defendants are now engaged in closing the gaps and breaks in said lines of levee and repairing the levee system as a whole, raising the grade thereof, and contemplate further increases in such grade and further enlargement of the said levees, and for these purposes have obtained large appropriations from the Congress of the United States; that the effect of closing by the defendants the natural outlets along said river and confining the flood waters between the levee system as a whole is to obstruct the natural high water flow of the waters of said river in and along its natural bed for the entire length, thereby raising the level of the water to such an extent that said flood waters within the last five years have attained a sufficient height to flow over plaintiff's land, and when there is as now a high-water stage in said river the waters thereof overflow and remain standing upon and over his lands to a depth of from 4 to 8 feet, so that he is now being interrupted in the profitable use, occupancy, and employment of said land; that as a result thereof, said water being held back by said levees at a higher elevation as aforesaid, his land is being covered with superinduced additions of sand, silt, and gravel from 6 inches to 3 feet in depth, and the houses and fences thereon being washed away, rendering the land and the houses thereon unfit for occupancy, causing the practical destruction thereof, and destroying its market value; that the defendants state and local levee boards are insolvent; that no proceeding for the condemnation of the said lands has ever been instituted by either of the defendants, and that no provision has been made by any act of Congress or any of the states, under which the local levee boards are organized, to pay for or give compensation for his said lands now being so damaged, injured, taken, and destroyed; that complainant has no adequate remedy in a court of law against any of the defendants; that, even if he had the right to sue any or all of the defendants

in a court of law for the recovery of damages sustained by him, the injury is a continuing one, and will be repeated annually whenever the Mississippi river reaches its high-water stage, and any attempt to recover damages in a court of law would involve complainant in an interminable multiplicity of suits; that the plaintiff realizes fully the great worth and public utility of the levees and the objects for which the same are projected, as well as the great benefit to the people as a whole to be derived from the accomplishment and the successful achievement of such purposes, but he says that under the circumstances set forth in the bill it is not equitable nor just to him, nor to the numerous other persons whose lands are similarly situated, to inflict these tremendous hardships on them in the prosecution of such work; that by reason of these acts he has been deprived of his property without just compensation, in violation of the provisions of the Constitution of the United States.

The prayer of the bill is that an injunction be granted enjoining and restraining all of the defendants, their officers, agents, and contractors, from constructing, maintaining, or repairing any levee or levees along the said Mississippi river.

The only defendants who were served with process and who have entered their appearance are the St. Francis Levee District and the Cotton Belt Levee District Commissioners, who have filed a motion to dismiss upon the ground that the bill fails to state facts sufficient to entitle plaintiff to the relief prayed.

Barnette E. Moses, of Memphis, Tenn., for complainant.

T. A. Turner, of Jonesboro, Ark., and H. F. Roleson, of Marianna, Ark., for St. Francis Levee Dist.

Moore, Vineyard & Satterfield, of Helena, Ark., for Cotton Belt Levee Dist.

TRIEBER, District Judge (after stating the facts as above). The right of the states bordering on the Mississippi river and its tributaries to construct and maintain levees along the banks of said river has been exercised from time immemorial, and until the filing of this bill has never been questioned in the courts. All the territory embraced in the bill lying on the western bank of the Mississippi river was a part of the Louisiana Territory acquired by the United States from France, and under the laws of France, as well as Spain, the former owners of that territory, in force prior to and at the time of the purchase by the United States, the lands in that territory abutting on the rivers and bayous were subject to a servitude in favor of the public whereby such portions thereof as were necessary for the purpose of making and repairing public levees could be taken without compensation to the owners. The state of Louisiana by statute asserted this right ever since the purchase by this government, and the validity of this claim was expressly sustained by the Supreme Court in Eldridge v. Trezevant, 160 U. S. 452, 463, 16 Sup. Ct. 345, 40 L. Ed. 490. Whether such servitude exists in the other states acquired by the Louisiana purchase it is unnecessary to determine in this case, as it never has been the policy of those states to claim or exercise it. Board of Levee Inspectors v. Crittenden, 94 Fed. 613, 36 C. C. A. 418, where this claim was set up in behalf of a levee district created by the state of Arkansas. In Hagar v. Reclamation District, 111 U. S. 701, 705, 4 Sup. Ct. 663, 665 (28 L. Ed. 569), the Supreme Court speaking on that subject, said:

"In some states the reclamation is made by building levees on the banks of the streams which are subject to overflow; in other states by ditches to carry off the surplus water. Levees or embankments are necessary to protect lands on the lower Mississippi against annual inundations. The expense of such work may be charged against parties specially benefited, and may be a lien upon the property. All that is required in such case is that the charges shall be apportioned in some just and reasonable mode, according to the benefit received."

In Leovy v. United States, 177 U. S. 621, 625, 20 Sup. Ct. 797, 798 (44 L. Ed. 914), it was held:

"Subject, then, to the paramount jurisdiction of Congress over the navigable waters of the United States, the state of Louisiana has full power to authorize the construction and maintenance of levees, drains, and other structures necessary and suitable to reclaim swamp and overflowed lands within her limits."

In Manigault v. Springs, 199 U. S. 473, 479, 26 Sup. Ct. 127, 130 (50 L. Ed. 274), the court, after quoting from numerous cases relating to the power of the states to authorize the erection of bridges, said:

"While all of these cases turned upon the power of the state to authorize the erection of bridges, the same principle applies where the Legislature deems it necessary to the public welfare to make other improvements for the reclamation of swampy and overflowed lands, though certain individual proprietors may thereby be subjected to expense."

[1] The authorities as to the power of a state to construct levees or drains to protect the lands bordering on rivers from inundation are too numerous to make it necessary to cite them. The conclusion reached by this court from an examination of them is that under the police power every sovereign state has the power to construct and maintain levees and provide for the drainage of swamps, when deemed necessary for the general welfare of its people for the protection of the health and property.

In Manigault v. Springs, supra, in discussing the question whether such legislation is a proper exercise of the police power, the court said:

"Of this we have no doubt. Although it was not an exercise of that power in its ordinarily accepted sense of protecting the health, lives, and morals of the community, it is defensible in its broader meaning of providing for the general welfare of the people by the reclamation of swampy, overflowed, and infertile lands, and the erection of dams, levees, and dikes for that purpose. We have often held that private interests are subservient to that right, except where property is taken for which compensation must be paid, and must give way to any general scheme for the reclamation or improvement of such lands."

Congress recognized this right at an early date by not only permitting the exercise of this power, but materially aiding the states by liberal donations and appropriations. By an act approved March 2, 1844 (chapter 87, 9 Stat. 352), Congress donated all of the swamp and overflowed lands owned by the national government in the state of Louisiana to that state for the purpose of aiding it "in constructing the necessary levees and drains to reclaim the swamp and overflowed lands therein." By Act April 28, 1850, c. 84, 9 Stat. 519, it granted the

same kind of aid to the state of Arkansas and "each of the other states of the Union in which such swamp and overflowed lands, known and designated as aforesaid, may be situated." Since then millions of dollars have been appropriated by the national Congress almost annually to aid in the construction and maintenance of levees; Congress being of the opinion that the construction and maintenance of these levees are an aid to and an improvement of navigation on these rivers. No provisions of the national Constitution or of this state have been called to the attention of the court which prohibit the exercise of that power, nor can the court find any such prohibition in either of these instruments.

When we consider the vast territory, the millions of people, the great value of the property affected by these periodical overflows, a government which would fail to take some steps to prevent the loss of life and destruction of property likely to occur by reason of these inundations which occur annually, and in some years two and three times, would be derelict in its duty to its people. Whether the levee system is the best that can be devised for that purpose, or even whether it is prejudicial, as claimed in the argument by counsel for complainant, is a matter to be determined by the legislative department of the government, and is not subject to review by the courts.

[2] It is unnecessary for the court to state what the effect of granting the injunction as prayed by plaintiff in this case would be, as that is apparent to any one at all familiar with conditions prevailing in the Mississippi River Valley. But it is claimed that under the fifth and fourteenth amendments to the Constitution of the United States neither the states nor the national government have the power to construct or maintain these levees to the great damage of many of the riparian owners situated as is the plaintiff, without first making compensation for the damage sustained. It will be noticed that there is no allegation in the bill that any part of plaintiff's land was actually taken or invaded by any of the defendants; the only allegation in the bill being:

"That by reason of the construction and maintenance of these levees his lands are frequently overflowed so that he is interrupted in the profitable use, occupation, and employment of said lands."

There is nothing in the national Constitution imposing upon a state the duty of making compensation to the owner of lands for consequential damages sustained by the construction or maintenance of an improvement beneficial to the people at large when there has been no actual taking of any of the property. Transportation Co. v. Chicago, 99 U. S. 635, 25 L. Ed. 336; Osborne v. Mo. Pac. Ry. Co., 147 U. S. 248, 13 Sup. Ct. 299, 37 L. Ed. 155; New York City v. Pine, 185 U. S. 93, 22 Sup. Ct. 592, 46 L. Ed. 820; De Lucca v. North Little Rock (C. C.) 142 Fed. 597.

The Constitution of the state of Arkansas now, and at the time of the construction of these levees, in force, provides (article 2, § 22):

"The right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor."

And article 12, § 9, provides:

"No property, nor right of way, shall be appropriated to the use of any corporation until full compensation therefor shall be first made to the owner, in money, or first secured to him by the deposit of money, which corporation, irrespective of any benefit from any improvement proposed by such corporation, shall be ascertained by a jury of twelve men, in a court of competent jurisdiction, as shall be prescribed by law."

Whether these provisions of the Arkansas Constitution apply to lands in another state, or whether they apply to private corporations only and not to the state or its subsidiary agencies, it is unnecessary to determine in this action, as there is no claim for damages, but it may be well to refer to the construction placed upon these provisions of the Constitution by the highest court of the state. In Cribbs v. Benedict, 64 Ark. 555, 559, 44 S. W. 707, it was held that the provisions of article 12, § 9, of the Constitution, do not apply except when exercised through the instrumentality of a corporation, and that a drainage district created by the state is not a private corporation.

While the laws of the state of Arkansas provide that when the right of eminent domain is sought to be exercised by the taking of lands for a right of way, and the determination of the question in controversy in such proceedings is likely to retard the progress of the work of such railroad, the court or judge in vacation shall designate an amount of money to be deposited by such company subject to the order of the court, and, when the money is thus deposited, it shall be lawful for such company to enter upon such land and proceed with the work through and over the lands in controversy prior to the assessment and payment of damages for the use of the land. Sections 2955, 2956, Kirby's Digest of the Statutes of Arkansas. There is no provision of law authorizing such proceedings when the land is not actually taken or invaded, but only consequentially damaged. It would therefore be impossible for the commissioners of a levee district to proceed with the construction of the levee if it had to have the consequential damages caused thereby determined in advance; for how could any one know what the effect of such construction would be? De Lucca v. City of North Little Rock (C. C.) 142 Fed. 597, 600.

Assuming, as we must on a motion to dismiss the bill for want of equity, that the allegations in the complaint are true, and also assuming that they are sufficient to make these districts responsible for the damages sustained by plaintiff, why has he not a complete and adequate remedy at law? If the land has become utterly worthless, then the proper measure of damages would be the value of the land before the injury was inflicted; if the value of the land has not been utterly destroyed but materially damaged, then the depreciation of its value by reason of the alleged unlawful acts of the defendants would be the proper measure of compensation. Plaintiff in his bill charges that he has no adequate remedy at law, but the only reasons he sets out for this allegation are that "such injury is a continuing one, and will be repeated annually whenever the Mississippi river reaches its high-

water stage, and that if it be attempted by complainant to recover damages in a court of law from any or all of the defendants for such continuous and repeated injuries to said lands, it would involve complainant in an interminable multiplicity of suits," and that "the defendants, state and local levee boards or districts have expended practically all their funds in their effort to construct, enlarge, maintain, and repair the said levees, and that they are now insolvent."

That there need be no multiplicity of suits requires no argument, as the damages may be recovered in one action as hereinafter stated. The claim that the levee districts have expended all of their funds in constructing and maintaining levees, and for this reason are insolvent, is disposed of by the fact that there is in every act of the Legislature of the state of Arkansas under which these districts have been created a provision for the assessment of taxes on all lands comprising each district, so that any judgment recovered against the district may be collected by levying and collecting the taxes on these lands, and, if the commissioners fail to levy such tax to satisfy any judgment recovered against it, they may be compelled to do so by writ of mandamus issued by the court which rendered the judgment. For the purpose of having the damages sustained by the plaintiff assessed, the defendants have the right, under the seventh amendment to the Constitution of the United States, if the action is instituted in the national court, or under article 2, § 7, of the Constitution of the state of Arkansas, if plaintiff elects to prosecute his action in the state court, to a trial by a jury. For a court of equity to assume jurisdiction in such a case would be to deprive them of that constitutional guaranty. Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358; Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 883, 977, 37 L. Ed. 804; Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276, 34 L. Ed. 873; Lewis Pub. Co. v. Wyman (C. C.) 168 Fed. 756, 762.

Nor is there any necessity for an apportionment of damages, which it was claimed by counsel for plaintiff in argument would prevent an adequate remedy at law. The allegations in the bill charge all the defendants as being tort-feasors, acting in conjunction with each other; and the law is elementary that each and all joint tort-feasors are responsible for the entire damage caused by their unlawful acts. There is no necessity therefore for an apportionment of damages, nor is it even necessary to join all of them in one action. If the allegations in the bill are true, the plaintiff may sue all or any of the defendants, their agents, and contractors, or any others who in any wise assisted or aided in the commission of the torts complained of, and recover in such an action all the damages he may be entitled to.

[3] Other reasons why plaintiff is not entitled to an injunction, the sole relief prayed for, are that, assuming for the purposes of this case that the injury suffered by the plaintiff could have been prevented by an injunction when the levee was first being constructed, a person cannot stand by without objection and see the work, which

will damage his property, done at an expense of millions of dollars, and, when completed, ask a court of equity to enjoin the repairing or maintenance of the same. The bill alleges that this work was begun in 1883 under the supervision of the government, and the courts will take judicial notice of the fact that levees have been constructed on the banks of the Mississippi river for over a century, and that millions have been expended in the work, but not until 1913, after the levees have all been completed, was this bill filed. Upon such a state of facts plaintiff is not only guilty of such laches as will prevent a court of equity from granting him relief, but he is estopped from claiming it. Duke of Leeds v. Earl of Amherst, 2 Phil. Chy. Cases, 117, decided by Lord Cottingham, and followed by American courts generally; St. Julien v. Morgan's Railway Co., 35 La. Ann. 924; Organ v. Memphis & Little Rock Ry. Co., 51 Ark. 235, 244, 11 S. W. 96.

The same principle has been applied in actions of ejectment when a railroad company had appropriated lands for a right of way without first having made compensation therefor. United States v. Great Falls Mfg. Co., 112 U. S. 645, 656, 5 Sup. Ct. 306, 28 L. Ed. 846; Kittell v. Railway Co., 56 Vt. 96; Goodin v. Cincinnati, etc., Co., 18 Ohio St. 169, 98 Am. Dec. 95; Harlow v. Marquette, etc., Ry. Co., 41 Mich. 336, 2 N. W. 48; Reichert v. Railway Co., 51 Ark. 491, 11 S. W. 696, 5 L. R. A. 183.

[4] But, if there were no other defects in the bill, plaintiff would not be entitled to an injunction as prayed for therein. Injunctions are not matters of right, and while they are issued, not in the arbitrary or whimsical will, but in the judicial discretion of the court, guided by the established principles, rules, and practice in equity, regard must be had for the comparative injury which will be sustained if the injunction were granted or refused. If it appears that the granting of the injunction, although plaintiff may be ordinarily entitled to it, would inflict such great damage on the defendants or the public that that suffered by the plaintiff, if the injunction is refused, will be relatively insignificant, an injunction must be refused. New York City v. Pine, supra; Kansas v. Colorado, 206 U. S. 46, 117, 27 Sup. Ct. 655, 51 L. Ed. 956; McCarthy v. Bunker Hill, etc., Co., 164 Fed. 927, 92 C. C. A. 259; Shubert v. Woodward, 167 Fed. 47, 54, 92 C. C. A. 509; In re Arkansas Railroad Rates (C. C.) 168 Fed. 720, 722.

In Parker v. Winnipiseogee, etc., Co., 2 Black, 545, 552 (17 L. Ed. 333), the Supreme Court said:

"Even after a right has been established at law, a court of chancery will not, as of course, interpose by injunction. It will consider all the circumstances, the consequences of such action and the real equity of the case."

It is a well-known fact that since the construction of these levees millions of acres of swamp lands and lands subject to annual inundation have been reclaimed and become the homes of hundreds of thousands of citizens. What was theretofore a wilderness has been made into a garden spot. To do away with the levee system at the present time would destroy these lands, and make the inhabitants

of that country homeless. No court of equity would be justified in lending its aid when such results would necessarily follow.

Equity rule 22 (33 Sup. Ct. xxv), now in force, provides:

"If at any time it appears that a suit commenced in equity should have been brought as an action on the law side of the court, it shall be transferred to the law side and be there proceeded with, with only such alterations in the pleadings as shall be essential."

[5] If the plaintiff had claimed damages in his bill as an alternative relief in case the court held that he is not entitled to an injunction, it would have been the duty of the court to transfer the case to the law side, provided the allegations of the bill showed that he is entitled to such relief; but no such relief is asked in the bill nor do the allegations show that he would have a cause of action on the law side of the court. A transfer would therefore be a useless act. By his own statement the plaintiff's cause of action is barred by the statute of limitations, and there are no allegations to remove that bar. Whenever the nuisance is of a permanent character, or its construction or continuance are necessarily injurious, the damage is original, and may be at once fully compensated. In such a case the statute of limitation begins to run from the construction of the nuisance. That is the rule established by the highest court of this state. St. L., I. M. & S. Ry. Co. v. Morris, 35 Ark. 622; Little Rock & Ft. Smith Ry. Co. v. Chapman, 39 Ark. 463, 43 Am. Rep. 280; St. L., I. M. & S. Ry. Co. v. Biggs, 52 Ark. 240, 12 S. W. 331, 6 L. R. A. 804, 20 Am. St. Rep. 174; Woods on Limitation (3d Ed.) § 180.

[6] In McCoy v. Plum Bayou Levee District, 95 Ark. 345, 352, 129 S. W. 1097, 29 L. R. A. (N. S.) 396, it was held that:

"A levee district which builds a levee so as to protect lands from overflow of the waters of a stream at flood time will not under the Constitution and statutory provisions of the state of Arkansas become liable for injuries to land lying between the levee and the river, resulting from flood waters being raised higher between the levee and the river than before the levee was constructed."

In Monongahela Nav. Co. v. Coons, 6 Watts & S. (Pa.) 101, plaintiff's millsite was destroyed by the backing up of water by a dam built by a canal company under authority of law for the improvement of navigation, and the Supreme Court of Pennsylvania held this to be a mere consequential damage resulting from the prior right to improve navigation, that it was damnum absque injuria, and that such flooding did not amount to a taking under the Constitution. This case was cited with approval and followed in Gibson v. United States, 166 U. S. 269, 273, 17 Sup. Ct. 578, 41 L. Ed. 996. See, also, St. Louis S. W. Ry. Co. v. Miller Levee Dist. No. 2 (D. C.) 197 Fed. 815, 822. While under the laws regulating pleading and practice of this state, as construed by the Supreme Court, the statute of limitations is not available by demurrer in actions at law, but must be pleaded, there is this exception: That if the complaint shows that sufficient time has elapsed to bar a cause of action, and also the nonexistence of any ground of avoidance, the statute is available on demurrer. Collins v. Mack, 31 Ark. 684; Hutchinson v. Hutchinson, 34 Ark. 164.

The motion to dismiss the bill is sustained.