# CHARLESTON

BROKAW v. CARSON *et al.* *

Submitted May 5, 1914.    Decided May 12, 1914.

NUISANCE—*Injunction—Acquiescence.*

> Equity will not enjoin the operation of an ice plant on account of the noise produced by it, at the suit of a party who consented to its erection within close proximity to his dwelling house, and who permitted it to be completed and expensive machinery installed without objection.

Appeal from Circuit Court, Jackson County.

Bill by John F. Brokaw against J. E. Carson and C. O. Rhodes. Decree for plaintiff, and defendants appeal.

*Reversed and Remanded.*

*Stone & Wolf* and *Warren Miller,* for appellants.

*C. W. Lively, W. F. Boggess, N. C. Prickett, Kenna K. Hyre,* and *Chas. E. Hogg,* for appellee.

WILLIAMS, JUDGE:

From a decree perpetually enjoining defendants from operating their ice plant and factory, machinery, boiler and engines as they are now located, as constituting a private nuisance, they have appealed.  Plaintiff owns a house occupied by himself and wife as a dwelling house and jewelry store combined, fronting on one of the streets in the town of Ripley.  Defendants conducted a meat market in a building on the adjoining lot and fronting on the same street.  In April, 1913, they purchased the lot in the rear of the building and erected thereon an ice plant which they operated in connection with their meat market.  There was no other ice plant or meat market in the town.  Prior to the installation of said ice plant the nearest ice market was twelve miles away, and ice delivered in the town cost the inhabitants nearly twice what defendants sold it for, after the erection of their plant.  Defendants used a ton, or more, of ice per week in preserving their fresh meats.  The ice factory is installed in a building 35 x15 feet and 14 feet high, erected over a concrete floor, and is close to, and just in the rear of, the meat market house to which is connected a cold storage box for the preservation of meats, and so arranged as to avoid the trouble and expense of transferring the ice from the factory to a refrigerator.  The plant is about twelve or fifteen feet from plaintiff's dining room.  Defendants operated a sixteen horse power gas engine, and a three horse power boiler to distill and condense the water.  The plant had been running only about ten days when, at the suit of plaintiff, its operation was enjoined.  During that time the machinery was kept running eighteen hours a day, from six o'clock A. M. to twelve o'clock at night, and, for three or four days, it ran both day and night.  Plaintiff complains of the smoke, soot and cinders from the boiler, and the noise of the gas engine and the running of machinery, and testifies that the smoke, soot and cinders caused the greatest annoyance.  But when defendants learned that the smoke,

soot and cinders annoyed plaintiff, they abandoned the use of coal and thereafter used gas as a fuel. This was three or four days before suit was brought. So that, apparently, the only remaining cause of complaint is the noise of the exhaust from the gas engine and the running of the machinery, which plaintiff and his wife both liken to the noise of a sawmill. It is not shown that another kind of engine could be used that would be less noisy. It may be that the exhaust could be more effectually muffled than at present, as for instance, by allowing the escape to pass through a small tank of water, through a conduit under ground. If such a plan is practicable at reasonable cost defendants ought to be required to adopt it.

There was a time in the history of this country when ice was considered a luxury, but it has now come to be regarded as a necessity, and artificial production has supplanted the old method of harvesting it in winter and storing it for the summer's use. Ice manufacture is now an extensive and useful industry. Scientific discoveries and modern inventions have converted the centers of population all over the civilized world into busy workshops, and in order that industries may be carried on to meet the needs of such communities it becomes necessary for some of us to suffer some degree of inconvenience and annoyance. We must be willing to give and take, for the convenience of the mass of people. The countryman, accustomed to little noise in the day time and none at all at night, is greatly annoyed and disturbed when he visits the city, by the noisy rattle of vehicles rolling over paved streets and by the grinding sound of street cars on the rails. But a few days sojourn will accustom his ear to the new sounds and they cease to annoy him. A person unaccustomed to sleeping on a moving train finds it difficult to sleep in a pullman car, but after a few days and nights travel on a long journey he sleeps more soundly when the train is in motion than when it is at rest. People dwell in cities by the sea where the sound of the breakers is never hushed, and by the roaring cataract that thunders on forever, and the sounds, which at first were disturbing, soon become restful music to their ears. These illustrations show that sounds are annoying to us more because of our unfamiliarity with them than

on account of their character or volume. Because of constitutional or temperamental differences some people are more easily disturbed than others, but the law seeks to adjust itself to the person of average temperament. In view of the fact that it does not appear that defendants may not be able, in some practicable way and at small cost, to reduce the noise without changing the location of their plant, we express no opinion as to whether or not it is a nuisance. It does not appear to be dangerous or deleterious to health, and, in determining whether its operation is a nuisance on account of the noise and its proximity to plaintiff's dwelling house, it is proper to consider the expense and inconvenience to defendants to move it, and compare their trouble and expense with the annoyance and inconvenience to plaintiff. But if it is practicable to lessen the noise at a reasonable cost defendants ought to be required to do it. If this is not practicable, then plaintiff's bill should be dismissed, on the ground of equitable estoppel. He stood by and saw defendants erect the plant, knowing what it was for, and offered no objection. Before the building had started he told Crow, who sold defendants the lot, that he was gratified to learn that the town was to be supplied with an ice plant. Crow applied to him to know if he objected to an ice plant there, before he sold the lot, and says he would not have sold it for that purpose if plaintiff had objected. His excuse for not complaining is, that he did not then know that it would produce so much noise as it did. But he must have known that machinery could not be operated by an engine without some noise. Plaintiff's acquiescence and his failure to make complaint until the plant was completed, at a large expense, estops him from demanding that it be now abated as a nuisance, even if it can properly be regarded as such. 2 Wood on Nuisances, Secs. 785 and 804; 2 Herman on Estoppel, Sec. 1063; 1 A. & E. E. L. 75. "The court will not, by injunction, restrain a defendant from the use and enjoyment of a work constructed with the express or implied assent of the complainant, though it prove prejudicial to his rights." Hulme v. Shreve, 4 N. J. Eq. 116. "It is held that one party may so encourage another in the erection of what he afterward complains of as a nuisance, as not only to deprive the aggrieved party of the right to equitable relief,

74 W. Va.

but to give the adverse party a right to invoke the aid of equity to restrain proceedings at law for the recovery of damages resulting from the alleged nuisance.'' High on Injunctions, Sec. 756. The decree appealed from perpetually enjoined the operation of the ice plant and factory, machinery, boiler and engine as they are at present located, but added a proviso, allowing it to be operated in its present location, ''if the same can be operated so as not to produce disagreeable, annoying and injurious noises or to cause injury, annoyance and damage from noise, smoke, soot, cinders, fumes, etc., which interferes with the ordinary use and physical comfort of the said plaintiff, his family and other occupants of his dwelling house, jewelry store, lot and premises, or any of them''. This empowers plaintiff to prevent the operation of it in its present location altogether, because he, or his family or some future occupant of his property might not be able to endure the least degree of noise without physical discomfort. The court, by its decree, should have determined what change, if any, it was practicable to make in order to reduce the noise, and should have required defendants to make it, and not have left it wholly to plaintiff. If not practicable to reduce the noise he should have dismissed plaintiff's bill.

We reverse the decree and remand the cause with directions to the chancellor to enter such decree as the equities of the situation may require upon further investigation into the practicability of reducing the noise without changing the location of the plant.

*Reversed and Remanded.*