Kinkead, J.
This is an action to enjoin the defendant from maintaining and operating its recently constructed roundhouse in such manner that the engines daily housed therein emit large quantities .of smoke therefrom which is carried by the wind in and upon plaintiff’s premises. The roundhouse is located in the factory district in the southeastern part of Columbus. The roundhouse cares for 80 or 90 engines per day, and the smoke is emitted from the engines, and not from a general stack.
*435 Plaintiff owns a fifteen acre tract of land which he has operated as a garden truck farm, and upon which he maintains and operates hothouses. The roundhouse was ‘ erected long after plaintiff acquired his farm. Plaintiff’s house and home is located on the farm, the roundhouse having been constructed in such close proximity thereto that the smoke comes into the home of plaintiff rendering its occupancy inconvenient and uncomfortable.
.1. Defendant’s Claim in Opening Statement That Plaintiff’s Remedy at Law is Adequate.
Defendant objected to proceeding to trial on the ground that plaintiff filed an action at law on the same day that this action was commenced wherein he asks recovery of $10,000 damages. That action is still pending.
Defendant claims that the action at law constitutes a complete and adequate remedy at law.
Counsel for defendant contends that the mere filing of the action for damages is enough to warrant the court in refusing to interfere by the extraordinary remedy of injunction in the operation of the road. It was admitted that the evidence would undoubtedly show that smoke and soot was emitted, and that the wind carried it over plaintiff’s premises when the wind was from the east. It was contended that it had not caused plaintiff to cease the green house business, but had probabLy caused him some inconvenience in living in the house where he resides.
It was contended that the injury that would be done to defendant by injunction would be irreparable, and would be far in excess of any injury which might come to plaintiff by the operation of the roundhouse.
Defendant’s counsel invoked the doctrine of comparative or balancing injury which is applied in equity when the nuisance sought to be enjoined may affect the general public to a large extent.
Defendant’s counsel contended that there could be no doubt that upon the mere statement of counsel that any damage whatever suffered by plaintiff may be compensated by *436 an action at law, and cited the case of Goodall v. Crofton, 33 O. S., 271, to the effect that injunction should not 'be granted unless a clear case of nuisance and irreparable injury be made out; that where a party complaining of a nuisance has an adequate remedy in an action for damages, he must establish his right to relief at law, before equity will interfere by injunction.
So it was insisted by defendant’s counsel that the court should not proceed with the trial of this case; that at the very most if the court should not dismiss the action it should not be heard until the action at law already filed has been tried and the result thereof determined, all of which would be a guide to the equity side of the court in determining what, if any, relief by way of injunction should be allowed.
Tt was insisted in argument that whatever damages would be allowed, would be infinitesimal, and that the court would not be justified in stopping the operation of the roundhouse and the railroad because of the character of injury to plaintiff which might be disclosed by the evidence. (-Some decisions have made the smallness of the damages, the basis of inadequacy, of the remedy at law — while if trifling, it may be otherwise.)
Counsel for defendant contended that nothing more in the shape of a record or statement was needed than that presented to the court by the pleadings and statements of counsel, which should warrant the court in holding that it should not proceed on the equity side until there has been an injury of damages before a jury, and thus to find out what the result in the law case might be.
Counsel for plaintiff, however, earnestly insisted that plaintiff had the clear right to proceed at once in the equity case, which, as contended, was the only way the court could determine the rights of the parties.
This disclosed the matter submitted to the court.
2. The Answer.
Defendant contends that plaintiff has “a perfectly adequate remedy at law.” The answer avers that long prior to 1916, *437 with knowledge of plaintiff, defendant began the erection of the roundhouse; that he made no objection to its construction; it avers that the railroad is largely devoted to carrying coal and raw products to the several manufacturing concerns located in that vicinity; that to desist from the use and operation of its tracks, yards and roundhouse would cause great and irreparable injury to the public, and would be in violation of an Act of Congress and interfere with interstate commerce.
The answer also sets up the filing and pendency of the actions at law filed on the same day as this one in which the precise allegations are made as in this one.
It is made clear on examination of the law case, that plaintiff’s petition treats the nuisance as continuing, not as permanent; $10,000 damages being asked. In the equity case plaintiff alleges the total value of his premises to be $40,000.
3. Practice in Earlier Common Laiv.
It was the practice in earlier common law and equity procedure for courts of equity to decline the exercise of jurisdiction by injunction before the legal rights of the parties had been heard and determined in an action at law. That was when there were two separate and distinct courts — the common law, and chancery courts.
The theory was that the rights of parties being legal, and equity taking jurisdiction only to furnish a more adequate remedy than that afforded by law, it was thought necessary that the legal rights be first determined by an action at law before equity should assume jurisdiction in eases of nuisance. So a distinction was earlier drawn between the exercise of chancery powers which were for temporary purposes and those which were permanent. Hence, a temporary injunction might be granted, but not a permanent or perpetual one till the legal rights were settled at law. Irwin v. Dixon, 30 U. S. (9 How.), 10, 28, 29; Sutton v. Montfort, 4 Sim., 365; Kennerly v. Phosphate Co., 17 S. O., 411, 43 Am. Rep., 607.
This was a rule of expediency and policy, rather than an essential condition and basis of the equitable jurisdiction. I *438 Pom. Eq. Jur., See. 292; Pom. Eq. Rem. (2nd Ed.) See. 522, See. 1936.
From this early rule, adopted when courts of equity were separate and distinct from courts of law, came the idea that courts of equity might decline to exercise their extraordinary powers and jurisdiction until the legal rights of the parties had been first determined in an action at law. As stated in Pomeroy’s Equitable Remedies, Sec. 1936 (Sec. 522) the grounds upon which the rule was based have disappeared by the union of courts.
The old doctrine of mere refusal by courts of equity to exercise jurisdiction solely on the ground that the legal rights of the parties should be first determined in an action at law is no longer of any consequences. This passed out when jurisdiction in law and equity was merged in the same court.
4. The Modern Practice.
Our courts now have no such power; it is as much the duty of a court to exercise its equity powers when properly invoked as it is to .exercise its law powers. It can be excused from exercising its extraordinary equity powers only when it is made to appear that the legal remedy is adequate..
The limitation upon the power of the court to assume jurisdiction in equity is stated in Goodall v. Crofton, 33 O. S., 271, though in one respect inaccurately. It is there said that where a party complains that a business — lawful in itself is a nuisance — which affects his property injuriously, has an adequate remedy at law for damages, he must establish his right to relief at law, before equity will interfere by injunction.
The rule since the code is that a court of equity will not exercise its extraordinary powers of injunction if the remedy at law is ■adequate. That is the doctrine of that ease. It is only when the remedy at law is inadequate in a legal sense that injunction will lie. To state that the complainant “must establish his right to relief at law, before equity will interfere by injunction,” has reference to the ancient rule. Our courts of chancery now *439 determine legal rights and grant relief in equity as the facts may warrant. Possessing equity powers our courts are competent to at once determine legal rights in cases of nuisance without a jury whenever jurisdiction is legally invoked, that is when the petition states facts disclosing the inadequacy of the legal remedy.
5. Adequacy of Remedy Determined on Basis of Kind of Nuisance — Permanent and Continuing Nuisances.
To determine the adequacy or inadequacy of the legal remedy, it is first .essential to ascertain the character of the nuisance — -whether continuing or permanent. On'this question the decisions in the states in cases at law are deplorably conflicting. This court in the recent trial to a jury of Atcheson v. The Farmers Fertilizer Company, adopted the common law rule of distinction between the kinds of nuisances, repudiating all invasions, evasions or modifications of the rule made by some decisions. The common iaw doctrine has strong appealing force; it is so clear, sound and practical as to demand its approval and application. In substance this is the rule: when one builds a structure and uses it, operates or maintains it in such way as to malte it a nuisance, the duty to remove the cause of nuisance is imperatively imposed upon the party, requiring him to abate the same, without unreasonable delay.
If it is within the power of the person by the exercise of skill and labor to abate the nuisance, he must do so. If he fails in his duty, but allows the same to continue, he is responsible for maintaining a continuing nuisance. One who is injured by such nuisance may prosecute an action at law for damages. If the nuisance affects the health only, there is no settled rule of making a pecuniary award, the amount of damages to be awarded resting in the discretion and judgment of the jury. But the damages for nuisances affecting property rights are fixed and definite, and the amount thereof is clearly ascertainable.
If one responsible for maintaining a nuisance is unable by the exercise of skill and labor to abate it, then it is to be re *440 garded as permanent, because it will continue indefinitely without change. We do not follow those decisions which undertake to characterize the structure as permanent because of its nature and character, for the reason that rights and remedies are fixed solely upon the basis of duty and obligation. The right to engage in business is correlative or equal to the rights of others to do the same, or to build and own their own homes, or places of business or structures used for business. AVhen one pursues his right to engage in business, to build and operate a factory, ■railroad and all equipment essential thereto, such as a roundhouse, the rights of all other persons in the same vicinity are equal and correlative so far as each may build structures and engage in business — the limitation or restriction of the law being that .each is responsible for injury caused by reason of the conduct of their business, and bound by law to respond to the remedies which the law affords. That is the extreme limitation; keep this thought in mind in the study of this opinion. The remedies in cases of nuisance are clear and well defined, if we but learn and know how to follow them.
There is, however, diversity of opinion concerning the remedy by injunction against nuisances, as there is in respect to the remedy at law — which this court recently found in trial of Atcheson v. The Farmers’ Fertilizer Company to a jury.
One may study decisions only to become confused on the sea of precedent due to conflict and lack of clarity in judicial expression. In exploring the earlier common law the student of legal history of English law will find conflict and uncertainty of judicial .expression as in our own decisions. This is due to the inherent difficulty of applying a hard and fast rule to the distressing and aggravated kinds of nuisance which find their way into court. It is often difficult for courts of equity to decline to exercise its remediable intervention by the observance of strict procedural rules.
There has been careless regard for true boundary lines between adequacy and inadequacy of remedy afforded by law, as well as to the distinction between the kinds of nuisances, proper conception and application of which is essential to clarity of *441 thought and decision. This has led to an improper conclusion, one manifestation of which is the assumption of equitable jurisdiction with little concern for questions of irreparability or adequacy of remedy. Remedial rights of parties must rest upon this distinction between the kinds of nuisance and the adequacy or inadequacy of the remedy at law.
The decisions do not uniformly give due regard to this distinction. It is common knowledge that there is probably moi'e diversity of judicial expression on the subject of nuisance — a. subject of much variety of conditions — than there is concerning other topics of law.
Our court of last resort has not within recent years exhaustively considered the subject.
It would seem that the confusion might be cleared by a simple illustration.
Every one has the right to use his own property as he chooses, being responsible for injury done to others. If an owner maintains a nuisance on'his property which is injurious to others, and it lies within his power to abate it, 'he may be compelled to perform the duty to abate it by a proceeding in-injunction. But if he can not abate it, because it is impossible to do so by the exercise of skill and labor, the owner having the right to use his property for any lawful purpose, and being responsible to pay compensation for any injury done, he must respond in damages for the injury. If the total value of the property is destroyed he must make full compensation, according to the rule fixed by law. If there is only partial destruction, compensation must be made upon that basis. If the property is of such peculiar value and advantage to the owner that money will not compensate the loss, then equity will furnish a remedy.
Therefore the adequacy of the remedy at law clearly marks the dividing line between law and equity. Any other test would not be consistent with settled principles of the law. This is the test of distinction between the kinds of nuisances, and of the appropriate legal remedy.
Adequacy of legal remedy is the determining factor in a proper conclusion of the right of a party to pursue the remedy at law or the extraordinary remedy by injunction.
*442 6. Court May Sua Sponte Suggest the Question — Facts to Be Pleaded to Disclose Bight in Equity.
In view of the objection made by counsel for plaintiff; it is interesting to note what is stated in Yol. 5 Pomeroy’s Equity —being the first volume of Equitable Remedies at Sec. 1932 last edition (Old See. 518):
“And in courts of the United States, at least, this inadequacy is regarded as so important, that it may be insisted on by the court sua sponte, though not raised by the pleadings, nor suggested by counsel.”
It was raised by the pleadings and by counsel in the opening statement in the present case. Pomeroy in the same section calls attention to certain requirements of pleading. The right must be alleged clearly and definitely, so as to leave no ambiguity; facts must be alleged to show that the injury will be irreparable; plaintiff must allege facts which show the injury and the inadequacy of his legal remedy. To merely allege that an injury is irreparable is a conclusion; this is a common allegation, improper, futile, and present in this case.
The sole test of the right to proceed in equity is that the injury shall be irreparable.
The theory of plaintiff’s action at law referred to in defendant’s answer is that the nuisance is continuing and not permanent. The pleadings in that case have been examined and compared with those in this, the equity case; there are -no facts alleged in either petition — law or in equity — which suggests the character of the nuisance — whether permanent or continuing. It is essential that this should appear in the chancery case so that the court may consider and determine the appropriate rule of damages to be applied in the legal action, in order to d.ecide the question in the present case. The prayer for relief indicates the theory to be that the cause is for a continuing nuisance; this also appears from the opening statement of counsel.
The statements of counsel for defendants practically concedes that the nuisance is permanent. It was stated that the matter *443 of abating the smoke nuisance had been considered, that a remedy might be resorted to at an expense of approximately $100,000; but that even then there could be no certainty of its b'eing effective.
On the subject of temporary or permanent nuisance, following the doctrine of Railway v. Coleman, 210 S. W., 947 (Ky. 1918, this court in Atcheson v. Fertilizer Co., recently tried on the law side, charged the jury as follows:
“The test of whether a nuisance is temporary or permanent, depends upon whether the same can be readily abated by human skill and labor and at reasonable expense; if the cause or causes creating the nuisance can not be readily removed (at reasonable expense) by human skill and labor, then it is to be regarded as permanent. ’ ’
The Kentucky decision used the words “at reasonable expense” but this court omitted them in the charge. It rather seemed that the amount of the expense was immaterial. In Paddock v. Somes, 102 Mo., 226, 238, 10 L. R. A., 254, the court considered that it made no difference, that it did not in any measure operate as an excuse that the nuisance may not be obviated without great expense.
The inclination is towards the common law doctrine which imposes the imperative duty to abate the nuisance ■ regardless of the expense. The. law has ever been zealous in protecting the small property owner regardless of the expense required to abate the nuisance. The theory has been advanced by some decisions that to destroy the value of property by nuisance constitutes a practical taking, and that courts of equity will not permit such kind of taking. This suggestion by some old decisions in England and a few very early ones in this country has no place in the law of nuisance. Courts will strictly guard and protect the rights of both parties. There is no legal “kinship” between nuisance and eminent domain.
The harshness of the rule of nuisance has been equalized by the doctrine of “balancing of injury” which is applied under peculiar conditions which subject may be considered in the opinion.
*444 7. Whether Nuisance Permanent or Continuing the Vital Question.
The question of vital importance in deciding the adequacy of the remedy at law, is whether the nuisance is permanent or continuing.
Discussion of the conflicting decisions in the different states which have been lately studied will not be made. It will not be of much benefit to consider the decisions which have devised some “makeshift” rule in order to hold a particular nuisance to be permanent, because of the character of structure, of an apparent purpose to continue a nuisance permanently. Text' books and decisions recognize the irreconcilable conflict of decisions. In no wise professing superior wisdom, it may be stated that our industry and careful research rather than any degree of learning and our recent extensive and careful consideration of the question as disclosed by the decisions, Legal Dictionaries, adjudged words and phrases, and Webster’s International Dictionary, brought to notice the simplest kind of a test of whether a nuisance is permanent or continuing. And it is the common law test which does not seem to have been always readily perceived. The character or nature of a structure as regards its permanent character is not the paramount question; it is relevant to the question only as it may disclose whether the cause of the nuisance may be abated by the skill and labor of man.
Designating nuisances as permanent and continuing according to the common law is now a convenient and practical method of classifying the two kinds of nuisance, the nature and character of which is dependent upon the primary cause of the particular case of nuisance. Such classification is also essential in considering the power and ability of man to change conditions or the nature of the structure with a view of abating the nuisance.
Courts have expended much labor in an endeavor to describe or define a permanent nuisance. Without unduly extending this already too long opinion it may be observed that the numer *445 ous decisions have not given due consideration to classes of nuisances and the basis thereof. The best authority is Webster's dictionary. There we find the word permanent to mean that a thing or condition — such as a nuisance — will continue indefinately, ivithout change that varies its character. And the judicial definition of permanent, as the word is used in law, is Continuing in the same state, or without any change that destroys form or character, remaining unaltered or unremoved, continuing (Wash., etc., R. Co. v. Patterson, 9 App. D. C., 423, 435; Bank v. Town, 44 Fed., 262-266).
Permanent nuisance does not import an injury which will continue forever, but means one which, is something more than a mere temporary injury. (Bassett v. Johnson, 2 N. J., 184, 162.) The law recognizes the misleading character of the designation of an injury as permanent (120 N. C., 498) ; hence, this court characterizes it in a common simple way as one which is not contemplated shall continue forever, but only indefinitely, without change that varies its character.
Permanent nuisance expresses the idea that a nuisance may continue in the same state, unless the person obligated to abate it performs his diity and changes its form so as to destroy its character as a nuisance.
The classification adheres to and constitutes the basis of substantive rights of diction. The basis of this division of Bights of Action, however, was the character and extent of the injury done to the right of property, regardless o£ the nature of the right. This division of nuisance constituted the scope and extent of rights and causes of action to be stated in a petition filed in Court, and marked the limits of recovery of damages. If the nuisance presented in court be shown to be permanent in the sense defined by common law as stated by the court, then the plaintiff is entitled to recover at once and in one action all the damages he may sustain, present and future or prospective.
If the injury be' temporary, as distinguished from permanent; that is, if it is one which can be abated, but the defendant has failed continuotisly to abate it, it is temporary or continuing, in which case recovery of damages is limited to such, *446 damages as the complainant has temporarly suffered to the date of the action, and running back witbin the time prescribed by the statute of limitations, or from the date of creation of the nuisance, as shown by the evidence. If the injury and damage be intermittant, occasional, or recurring, and not permanent; or if the injury be continuing in nature, and if it be of such character that il may be removed by removing the cause thereof, by shill and labor, or is one which may be abated by the owner of the property, or which the party injured thereby may have abated in a proceeding in court; or' the injury already inflicted is not of a permanent character, some courts hold that the owner himself may elect to remove the cause of the nuisance by repairing or reconstructing the structure rather than to pay damages for permanent injury. There are a number of decisions supporting such .view. This court does not follow such a doctrine, nor does it cite.the decisions. Some courts consider that if it lies within the power of the owner of property operated so as to constitute a nuisance it is to be supposed that he will remove it rather than suffer the entire damage it may inflict if permanent. Hargreaves v. Kimberly, 26 W. Va., 787; 53 Am. Rep., 121; Aldworth v. Lynn, 153 Mass., 53; Am. St., 528; and the common law is founded on this principle. Tn such case, and for the reasons stated, if it lie within the power of the owner by skill and labor to remove the cause, the nuisance is classed as continuing. And the measure of damages in such case is that which the injured party may have sustained by the nuisance up to the date of filing his action for redress, and within the period of limitation for filing the action, which in this state is four years, or from the date of the creation of the nuisance, if of shorter duration than the time covered by the limitation statute.
This is the sole basis of the common law distinction between the two kinds of nuisances, that is the ability of man to abate the nuisance; and the rule is based upon the theory that it lies within the power of human skill and labor to remove the cause of continuance of the nuisance, and the ability of the person responsible to thereby abate the same by putting the structure *447 in such condition, or by adopting such precautions, or by devising such methods or processes in the conduct of the business or manufactory that the cause of the nuisance may be thereby removed and abated.
In every case of nuisance, therefore, when it is within the power of the owner of property on which the same is maintained and exists to abate it, it is the duty of such owner by the exercise of skill and labor to abate the same. And equity will enforce the performance of that duty. The rule that a structure that will endure unless changed by the hand of man is a permanent nuisance, and one who is injured thereby must recover all damages, past, present and future in one action, has been criticized by an annotated note writer who questions the •wisdom of decisions supporting the doctrine.- L. R. Ann. 1916, E. 1047, N. 39. Especial attention is called to the cases of Nashville v. Comar, 56 Tenn., 415, 7 L. R. A., 101 Tenn., 465, and Chattanooga v. Dowling, 101 Tenn., 342, which it is claimed oppose the idea that a structure will remain permanent in character, unless its character as a nuisance can be changed by the hand of man. The note writer contends that the theory that a structure “will endure unless changed by the hand of man” “is not a good rule.” The writer misses the point; and so do the Tennessee decisions as shown by a quotation in criticism of Troy R. R. Co., 3 Foster, 82, viz.:
“Wherever the nuisance is of such character that it is necessarily an injury, and when it is a permanent character that will continue without change from any cause but human labor, then the damage is an original damage, and may be at once compensated. ’ ’
It was appropriately observed in Harvey v. R. R. Co., 120 Iowa. 472-3, that the confusion in the precedents touching the character of a nuisance arises not so much from proper principles as from an inherent difficulty in clearly distinguishing injuries which -are original and permanent from those which are continuing.
The word permanent has reference not alone, and perhaps *448 not so much to the character of the structure causing injury as it does upon future use and conditions, and the power and ability of man to change its character.
Some ‘courts have not perceived the meaning of the expression that a nuisance “will continue without change from any cause but human labor.”
Every rule of law is based upon a duty; when one constructs anything which becomes a nuisance the law makes it his dut3r to abate it, if he can do so b3r the hand of man. If he is able to do so, but fails in his duty; he can be compelled by suit in equity .perform his duty and to remove the cause of injury. Tf he fails to abate the nuisance, he may be enjoined from further maintaining it, unless he performs his dut3r; the injunction may be made conditional upon performance of his duty. The only way in which he may avoid the effect of the injunction is to perform the duty which the law imposes upon him to abate the nuisance and to change the structure if he can. If he can abate it, the nuisance is continuing so long as he fails to perform his duty. If he can not abate it by skill or labor; that is, if it be not tvithin his power to abate the nuisance, then it will probably continue indefinitely without cha/nge by the hand of man, and will therefore become permanent. In that event the rights and duties will be determined upon the basis of the permannt character of the nuisance.
Of course there is a diversity of nuisances, but we are here dealing with a structure — a roundhouse — a smoke nuisance, which will continue indefinitely unless the railroad compare takes steps to abate the nuisance; it will become permanent if it continues indefinitely without change.
The paramount thought in this opinion is to give expression to the original common law distinction between permanent and continuing nuisance, and to condemn.innovations not based upon the true concept of the common law. A single individual, one who suffers injury b3r nuisance whose injury can be fulfy compensated b37' an adequate remedy at law, may not by the strong arm of equity stop the progress of inventive genius and public welfare so long as it, is made to appear that he can be adequately *449 compensated for injury sustained, simply because he stands upon the individual right of personal convenience or right of property. Equality of right justifies and warrants legitimate pursuit of business enterprise when redress at law may be granted for injury done. Each and every legitimate pursuit must receive legal sanction when injury to persons is allowed adequate redress at law, and when there is no ground or basis of equitable intervention. Parties litigant must be content with a legal remedy which is adequate.
8. Question Upon the Pleadings and Opening Statements.
Therefore the question to be determined upon the pleadings and upon the opening statements o'f counsel is, whether it is made clear that the nuisance complained of is permanent or continuing.
The claim of plaintiff in this respect must be made clear in order that the court may discover the appropriate rule or measure of damages, for the test of the adequacy or inadequacy of the remedy at law is whether the injury is irreparable.
To decide whether an injury is irreparable, it is essential that a court of equity be advised concerning the rule or measure of damages which will be applied at law in the trial of the action at law for recovery of damages.
The court is not advised by the plaintiff by averment of any fact or facts, nor by the statement of any fact in the opening statement, whether it lies within the power of defendant by skill and labor to abate the nuisance. If it is within its power to remove the nuisance, and fails to do so, the nuisance is continuing. If it is not within defendant’s power to abate the nuisance it is permanent.
The court is advised by no fact nor by any statement on behalf of plaintiff concerning this matter.
Defendant’s counsel, however, asserts that the matter has been considered, but that nothing can be done short of an expenditure of $100,000 and even then it is said there is no certainty that the means adopted will be of any avail.
*450 9. Matters of Common Knowledge.
It is understood that at every stage of trial constant use may be made of facts which are of common knowledge. The law is a human contrivance. and outgrowth resting on human nature, human experience, and the principles that regulate human thoughts. Matters of common knowledge and common experience are the constant guide in many ways and matters in legal procedure. Chamberlayne on Evidence, Sees. 691-2, 694.
So is it known that in Cresline, this state, a three million dollar round house is being constructed with a stack running high into the air, with a suction apparatus drawing all the smoke from all the engines into the one stack discharging the same in the air so far above that the -smoke does not cause annoyance as it does when it is discharged from each engine at a low altitude.
It is known that smoke regulations are now being undertaken in many cities under statutory provision. It is known that in Pittsburgh where there are many plants, the Pittsburgh bureau of smoke regulation has kept after all offenders against the smoke ordinance and has been instrumental in keeping up the standard of smokeless stacks so closely as the conditions and the weather permits. It is known that as results of court- action there have been changes and methods of. firing and the addition of temporary furnace changes resulting in smokeless stacks.
It is known that experts are contributing to scientific magazines on fuel consumption control by the United States Government. It is known that in Pittsburgh and other cities there is indication that fuel consumers are appreciating the value of smoke regulation.
Official notice and investigation has been made of the smoke nuisances in New Jersey which affect the comfort and repose, the security of life and health of a considerable number of persons in New York city. Litigation has been compromised by an understanding reached with companies whereby certain improvements will be installed which are expected to result in an effective abatement of the nuisance.
*451 It is known that beneficial results have come in Cincinnati from the work of the smoke inspectors and the efforts of the Smoke Abatement League in their effort to rid the city of 1bc smoke nuisance.
It seems not improbable that plaintiff might make isome showing even in his pleading, certainly in his proof, which would disclose whether the smoke nuisance charged against defendant is to be classed as permanent or continuing.
10. Petition Must -Stéte Facts Showing Whether Nuisance Continuing or Permanent — Whether Legal Remedy Inadequate.
It is essential that plaintiff should state facts showing whether his injury may be compensated or whether it is irreparable. It is the duty of plaintiff to make such investigation as will disclose whether any method or device may be adopted that will abate the smoke nuisance, and to allege facts in relation to the character of the nuisance. It seems probable that plaintiff may state facts which will disclose whether the smoke nuisance charged against defendant is to be classed as permanent or continuing. This is an obligation which rests upon plaintiff so that upon a challenge such as that made by defendant, the court may be advised whether the claim is that the nuisance is permanent or continuing, which is a pre-requisite to the determination of the adequacy of the remedy at law, which is the question now before the court.
The rule of pleading is well settled that the petition must show the nature of the right injured, the nature and extent of the injury, as well as that plaintiff has no adequate remedy at law, or that no adequate redress may be obtained at law, otherwise the plaintiff will be compelled to pursue his legal remedy. Adams v. Michael, 38 Md., 123, 17 Am. Rep., 516; Wood on Nuisances. Sec., 789.
11. Inadequacy of Legal Remedy.
The inadequacy of the remedy at law depends upon whether the injury done is irreparable in an equitable sense.
*452 W'hat then is meant by the term “irreparable?” There is confusion of thought and lack of uniformity of opinion on this subject. Bovier’s Dictionary cites a definition taken from a Florida decision but which came originally from an old South Carolina decision, 3 Jones Eq., 177, the early decisions of which state have always been well regarded. It is as follows:
“But the meaning * * * is not that * * * (which is adopted by the courts of England or in this state); * * * the injury must be of a peculiar nature, so that compensation in money can not atone for it; where .from its nature it may be thus atoned for, if in the particular case the party be insolvent and on that account unable to atone for it, it will be considered irreparable.” Indian River, etc., v. Trans. Co., 29 Am. St., 258, 259; 56 N. C., 177; quoting from 3 Jones, Eq., 177; 69 Am. Dec., 728.
The foregoing conception is probably too exacting. Rather should it be said that the irreparableness of injury depends more upon the nature of the right than upon the pecuniary loss suffered. (Robertson v. Lorrie, 77 Conn., 345); or that damages can not be estimated by an accurate standard, but only by conjecture (College v. Tunburg, 64 Wash., 19); or where, the injury affects property either physically in the character in which it has been used, held and enjoyed; or when it has some-peculiar quality or use, so that its pecuniary value may not fairly recompense the owner for the loss (Dunker v. F. & T. Club, 6 Cal. App., 524), or where it can not be measured by any certain pecuniary standard: (Cleveland v. Martin, 218 Ill., 73, 3 L. R. A., N. S., 629; Water Co. v. City, 127 Wis., 154; Lead v. Inch, 116 Miss., 467; Ann. Cas. 1913 B, 891), or permanent ruin to property (22 Colo. App., 332), or loss of health, the loss of trade, destruction of means of subsistence, or the ruin of property. (75 Fed., 703.)
By the term irreparable injury it is not meant that there must not be any physical injury or possibility of repairing the injury. All that is meant is that the injury would be a grievous one, at least a material one, and not adequately reparable *453 in damages. Sanderlin v. Baxter, 76 Va., 229, 44 Am. Rep., 165; 124 Mich., 492, 50 L. R. A., 134, 83 Am. St., 329. (See Note 11 Am. Dec., 500, 85 Am. St., 137.)
Here we encounter difficulty.
We find from decisions maintaining the test of irreparable injury first on the fact that damages at law can not be estimated by an accurate standard; or that it may be done by mere conjecture; or where it can not be measured by a certain pecuniary standard.
If that should be the rule or test of the right to demand the extraordinary remedy of permanently enjoining one maintaining a nuisance, it would at once clarify the difficulty.
For instance if the nuisance is continuing because abatable; if it injures one in his enjoyment of his property so that he can not occupy it, the pecuniary standard or measure of damages is the loss of rental value — that is, the difference in rental value before and after the nuisance. That is the rule if the nuisance injures the property right; quaere, whether this is so when the injury is to the personal right of comfort. One could recover his damages every four years by action at law, although at any time he would have the right to proceed in equity to avoid a multiplicity of actions and enjoin the nuisance.
If on the other hand the nuisance is permanent the injured party may recover damages measured by the difference in the market value of the land itself before and after the nuisance.
If the injury is to the health, there is no definite rule of pecuniary award; it rests upon conjecture.
If the nuisance affects the personal comfort in the use and enjoyment of ones own property, while this is in the nature of a personal right, still it may probably be closely identified with the right of property that it will in reality affect the right of property itself. If one can not use and enjoy his own property as a home, then it might affect its value; that extends only to the property which strictly constitutes plaintiff’s home.
If we were to follow the conception that an injury is irreparable only when there is no definite and certain pecuniary standard or measure of damages, there probably would be but a few *454 eases of nuisance coming within the jurisdiction of courts of equity.
In the present case the petition fails to state the portion of his property which actually constitutes his home; he says noth■ing about rental value or the market value of the part of his property actually constituting his home. No claim is made concerning this matter.
In respect to the soot and dirt on his hot houses, the plaintiff does not allege any facts sufficiently clear to show the nature of injury so as to disclose any measure of pecuniary award. It leaves the matter within the realm of conjecture. However it may be made certain by evidence as to particular reasons.
It is alleged that smoke and soot enters the windows and doors of plaintiff’s residence, soils and blackens the bedding, curtains and household goods ‘and supplies, becoming so noxious that the doors and windows must be kept closed to exclude the smoke and soot, causing discomfort, distress and injury to health.
It is claimed that the smoke and soot settles and collects on the glass of the greenhouses, excluding the sunlight and interfering with the growth of vegetables and plants, causing expense in repeatedly cleaning the glass.
It is also claimed that the soot and smoke settles and collects on plaintiff’s vegetables and crops thereby rendering them unmarketable.
These are the specific injuries alleged, except, however, that it is not definitely shown how much of plaintiff’s fifteen acre farm is thus affected.
Pomeroy Equitable Remedies, Yol. 5 Pomeroy’s Equity (last Ed.) Sec. 1940 (See. 596), under the heading “Damage Necessary to Justify an Injunction” discusses the question of the amount and character of damage that is necessary to sustain an injunction. It is stated that the question “is settled by simply applying the rule which is applied on the same point in an action at law. ’ ’ He further states that:
“If the injury is irreparable or such that damages given by a jury would be conjectural, it is clear, of course, that the question of the extent of damages will not need to be gone into. ’ ’
*455 This, too, seems to no purpose. The ever present rule is that equity furnishes its extraordinary relief only when the remedy at law is inadequate, or when the injury is irreparable in the sense that the injury can not be reparable because the relief whiclj the law affords is inadequate.
There is one certainty of rule of procedure disclosed by judicial decision; that is, that relief in equity by injunction will always be granted to avoid a multiplicity of actions. But there can be no multiplicity of actions except when the nuisance is continuing, when more than one action may be brought to recover damages for the continuing nuisance. The theory is that to avoid multiplicity of actions, equity will compel one who maintains a nuisance to either abate it or to stop its maintenance.
But if the nuisance is permanent; if the same can not be abated by skill and labor, plaintiff in a legal action may be fully compensated.- He may recover the difference in market value before and after the nuisance. If the owner can not sell the property for any purpose, he can recover its full value. If he can not sell it to be used for the same purpose to which the owner has put it, but can dispose of it for another and different purpose, whatever he may thus realize will disclose his damage. If he can realize as much on the sale of the property for a different purpose than that to which it has been previously put by its owner, then the owner suffers no damage.
If other land or property which is fit for the same purpose for which the owner has made of his land can not be obtained, then the owner might recover full value.
When the nuisance is. shown to be permanent because it can not be abated there can be but one action; there can be no such thing as a multiplicity of actions in such case. One action must suffice for the reason that compensation allowed for a permanent nuisance is an adequate remedy unless for some special reason an owner might not be able to procure other property suitable for his purpose. This must be the law if we follow correct principles; no other course can be pursued unless we repudiate the .rule that relief can only be had in eqrdty when the legal remedy is inadequate. Ohio has an opportunity *456 to follow correct principles, instead of entertaining injunction proceedings regardless of whether a plaintiff may obtain adequate compensation. Its decisions have not yet covered the ground.
The purpose accomplished by injunction against a continuing nuisance primarily is to prevent its further maintenance unless the person maintaining -it performs the duty enjoined upon him to abate the same. In the case of permanent nuisance the person maintaining it being unable to abate it, he must pay full compensation — that is enough to compensate the owner for the full value — deducting the amount which may be realized on a sale. It therefore appears that he has an adequate remedy at law. lie can obtain all that his property is worth, the one responsible for the nuisance has equal right to engage in a lawful business, being liable for any injury he may cause, and being only bound to abate a nuisance if he can.
In the case of a continuing nuisance the jurisdiction of equity may always be invoked as long as the person does not perform his duty to abate the same. The power of equity to enjoin in such case does not necessarily rest upon the inadequacy of the remedy in damages at law, but instead may be based upon the principle of avoiding the bringing of more than one action at law for the recovery of damages for the continuance of an abatable nuisance. The question of irreparable injury is therefore of no essential consequence in cases of continuing nuisance, when the equitable remedy can rest upon this ground. It may 'be founded solely on the avoidance of a multiplicity of actions, but more especially upon the idea of compelling the performance of a legal duty by abating an abatable nuisance.
Certainly one can not proceed with two actions based upon the theory of a continuing nuisance. Plaintiff’s law action is upon that theory. But this action seeking a permanent injunction does not disclose a definite theory; plaintiff fails to show whether it is an abatable and continuing nuisance, or whether it is permanent because it is not abatable. Plaintiff having filed two actions on the same date he can hardly complain of a multiplicity of actions since he has chosen to proceed *457 with two actions at the same time, although he may have the right to enjoin the continuance of the nuisance and to recover damages sustained up to the date of commencing the action, if it be a continuing nuisance.
Plaintiff’s petition is, therefore, demurrable for want of definite theory; it fails to disclose whether he claims the nuisance to be continuing or permanent. If his theory is that the nuisance can be abated, hence continuing, this action can be maintained on the basis of avoiding a multiplicity of actions; but he then should amend his petition and dismiss his action at law, for he may recover his damages in the equitable action, that is whatever may have been sustained to the date of the action. Authorities need not be cited upon a rule so well established.
If the theory is that this nuisance is permanent, it may be said that he has an adequate remedy at law in which he can be fully compensated for any injury sustained by recovery of the difference in the market value before and after the nuisance; that is, if he can sell his property for any price with the nuisance existing, he may then recover at law the difference between that price and the market value before the nuisance; therefore he is made whole. It is to be observed that plaintiff complains of injury to vegetable life and to the hothouse business. This brings the cause within the rule of damages for physical injury to property, not to mere right of enjoyment of personal comfort.
Or if plaintiff seeks the remedy in equity on other equitable basis, that is that the land has a special value for special purposes, and that he may not obtain other suitable land, allegation to that effect should be made. But even so, the legal measure of damages would seem to be adequate.
We have set forth the indisputable general doctrine and rule of procedure, that resort may be had to equity by injunction only when the remedy at law is inadequate — where the injury is irreparable unless equity is resorted to and the chancery powers of the court is invoked by granting its extraordinary relief.
*458 We have shown how adequate the legal relief may be in cases of nuisance, those which are continuing or permanent, how the ordinary rules of damages operates, and how certain and definite are the rules of damages as to each, in so far as property may be affected.
It has also .been shown how one who is injured by a permanent nuisance mav be fully compensated to the extent of the value of his property.
It must be admitted that the courts of England and this country have been especially considerate of persons injured by nuisance. In the begining, English chancery courts granted temporary injunctions prior to the determination of the rights of parties in an action at law. Then equity courts assumed full and original jurisdiction over the wrong on the same basis as all other matters within judicial cognizance, on the ground of irreparable injury.
The propriety of resort to equity in case of a continuing nuisance which is abatable, and when the compensation at law would be entirely futile, is well illustrated in Clowes v. Staffordshire Potteries Co., L. R. S. Ch. App., 125, where all that plaintiff could recover at law was the expense of a filter — that being the only thing to supply and install to abate a nuisance; the price of the filter was the utmost injury sustained. The remedy at law was held inadequate where merely nominal damages were recoverable, and where it might be necessary to bring a second or third action, it being then perfectly clear that the violation of duty on the part of defendant would be constantly going on, and that a court of law could not compensate the injury or stop the wrong. As expressed in this early case it was because it was most inconvenient to leave the rights of the parties to be thus determined. ’So the court concluded that a court of law could not compensate by damages, and considered this the best possible reason for interference by a court of equity. So it was considered that even though the rights be small, nevertheless even slight infringements should be watched with a careful eye, and repressed with a strict hand by a court of equity. Clowes v. Staffordshire Potteries Co., L. R. Ch. App., 125; Atty. Gen. v. Gas Co., 19 Eng. L & Eq., 648.
*459 Then the fact that a jury may give only nominal damages in ease of either continuous or permanent nature which would be utterly inadequate to protect the right, furnished the best reason for equitable intervention on the ground of irreparable injury. Clowes v. Staffordshire, etc., Co., supra; Wood v. Sutcliffe, 8 Eng. Law & Eq., 271; Ekmell v. Crowther, 31 Beav., 167; Rhodes v. Dunbar, 57 Pa. St., 274, 98 Am. Dec., 221; Wood on Nuisances, Secs. 778, 779.
In addition to the inadequacy of the ordinary verdict for injury for a continuing nuisance, the injured party would necessarily be compelled to institute suits at law indefinitely to preserve his rights, therefore equitable intervention clearly warranted in granting relief by injunction, preventative or mandatory. Van Bergen v. Id, 3 Johns Ch., 282, 8 Am. Dec., 511, and other cases cited by Wood, Nuisances, 'Sec. 779.
The rule from the beginning of equitable cognizance rested upon the proposition that if the legal remedy was inadequate to redress the particular injury resort to equity could be had. But if the legal remedy was adequate equity would not afford redress.
A mere diminution of the value of property by the nuisance, without irreparable mischief, was not considered sufficient; * * * or if an injunction would work great injury to one party, without corresponding benefit to the other, it was considered that it should not ordinarily issue, especially when an adequate protection can be had without it. Id. Parker v. Winniseogee Co., supra.
These doctrines it will be observed are taken from original fountains of law.
12. Concurrent Jurisdiction.
The courts have unconsciously drifted into the idea of concurrent jurisdiction in cases of nuisance, or at least parties come into equity without definite theory, and cases are heard and determined without due regard to the correct theory of procedure. Proceedings in injunction are often entertained when petitions therein do not present facts which disclose that the injury is irreparable. Chancellor Kent in Gardner v. New- *460 burgh, 2 Johns Ch. 162, 7 Am. Dec., 526, in dealing with a question of diversion or obstruction of a watercourse states:
“It is a clear principle in law, that the owner of land is entitled to the use of a stream of water which has been accustomed, from time immemorial, to flow through it, and the law gives him ample remedy for the violation of this right. To divert or obstruct a water course is a private nuisance; and the books are full of cases and decisions asserting the right and affording the remedy: F. N. B., 184; Moore v. Browne, Dyer, 319b; Lottrel's case, 4 Co., 86; Clynne v. Nichols, Comb., 43; 2 Show., 507; Prickman v. Trip, Comb., 231.
“The court of chancery has also a concurrent jurisdiction by injunction, equally clear and well established, in these cases of private nuisance. Without noticing nuisances arising from other causes we have many eases of the application of equity powers on this very subject of diverting streams.”
Chancellor Kent cites Finch v. Rasbridger, 2 Vern., 390, where plaintiff’s right to enjoyment of a watercourse was quieted by injunction. After recital of this class of eases, the learned Chancellor observed:
“These cases show the ancient and established jurisdiction of this court; and the foundation of that jurisdiction is the necessity of a preventative remedy when great and immediate mischief or material injury would arise to the comfort and useful enjoyment of property. The interference rests on the principle of a clear and certain right to the enjoyment of the subject in question, and an injurious interference of that right, which, upon just and equitable grounds ought to be prevented. 1 Vern., 120; East India Co. v. Sandys, Id., 127; Hills v. University, Id., 275; 1 Ves., 476; 2 Id., 414; Whitchurch v. Hide, 2 Atk., 391; 2 Ves., 453; Atty. Gen. v. Nichol, 16 Ves. Jun., 338.”
The learned Chancellor wrote this opinion in 1816, at which time the New York courts of chancery were separate and distinct from courts of law. He stated that:
‘ ‘ In the application of the general doctrine * * ® to this case, it appears to me to be proper and necessary that the preventative *461 remedy be applied. There is no need, from what at present appears, of sending the plaintiff to law to have his title first established. ’ ’
The order was merely a temporary injunction upon a bill of equity supported by affidavits, the Chancellor stating:
“I shall accordingly upon the facts charged in the bill, and supported by affidavits, as a measure immediately necessary to prevent impending injury, allow the injunction, and wait for the answer to see whether the merits of the ease will be varied.”
Wood on Nuisances at Sec. 793 also states that:
“The jurisdiction of a court of equity over nuisances is concurrent with the jurisdiction of a court of law. (Citing Chancellor Kent.) It will entertain complete jurisdiction in a proper case, where the bill and the proof makes a proper case for equitable relief, or will entertain a bill in aid of a court of law when an action to settle the rights of the parties is pending there, when the bill shows such a cáse of irreparable mischief as makes it proper to have the nuisance stopped until the rights of the parties are determined. (Citing 3 Jur. N. S.], 433; 1 M. & K., 154; 4 M. & C., 436; 1 H. & M., 573.) This species of injunction is called interlocutory, simply staying the nuisance during the pending of the litigation 53 Pa. St., 224; 2 Bland., 461; 20 Am. Dec., 3810 and is' often issued as much for the protection of the rights of the defendant as of the plaintiff. ’ ’
Chancellor Bland in Murdock’s case, 2 Bland Oh., 461, 20 Am. Dec., 381, in respect to the jurisdiction of chancery prior to Codes of Civil Procedure stated that:
“The only object of the conservative power of the court, as expressed in an injunction of this kind, is not to determine any controverted right, but merely to prevent a threatened wrong, or any further perpetration of injury, or the doing of any act thereafter whereby the right to a thing may be embarrassed or endangered, * * * The principal object of an injunction, in cases of this kind, is to prevent irreparable injury by preserving things in their present state; but if the injunction 'were to order anvthinp to be milled down or undone, it is obvious that *462 it might be itself used as a means of producing that very kind of irreparable injury to the defendant which the bill charged him with being about to perpetrate against plaintiff. Duvall v. Waters, 1 Bland C'h., 569, 18 Am. Dee., 850. There are, however, some cases in which an injunction has been so framed as, apparently, to approach to the very verge of ordering a thing to be undone.”
In discussing the character of injunctions allowed in equity in the old cases — whether preventative as distinguished from mandatory — the Chancellor in the last cited case did not command anything to be undone but merely that an injurious irregularity should not longer be continued, considering the continuance of the act a repitition of the act. Citing English cases, Ryder v. Bentham, 1 Ves., 343; Robinson v. Byron, 1 Bro. C. C. 588; Anonymous, 1 Ves. Jun., 140; Lane v. Newdigate, 10 Id., 1931; Blakemore v. C. Canal Navigation, 6 Cond. Cha., 544; Eden Inj., 238.
This line of discussion concerning the old practice, where there was much contention as to a preventative or mandatory injunctions, was indulged in for the purpose of showing how there could be no exercise of concurrent jurisdiction by courts of law and equity. Injunctions against nuisances were usually in advance of trial at law for the granting of immediate relief, prior to trial at law.
The idea was that this preliminary proceeding could be pursued in equity to restrain acts or preserve the rights as they are while the action at law was proceeding to judgment. In this preliminary equity proceeding the final rights were not determined; it was maintained concurrently while the action at law was pending. But after the code there could be no such concurrent jurisdiction. The right to go into equity was then made to depend upon the adequacy of the remedy at law.
It was the settled rule of English Practice that although a mandatory injunction on an interlocutory or preliminary application was allowed with great reluctance, still the courts granted the same in proper cases. See Note 20 Am. Dec., 398, and casés cited. Preventative processes were usually granted rather than mandatory ones.
*463 Prior to code procedure American decisions in the main followed the English practice. Of course since the code all this disappeared, and eases of nuisance became subject to the general rule of adequacy of remedy at law.
We have taken the pains thus to go into the older practice for the express purpose of showing that jurisdiction over nuisances is not now concurrent in law and equity as Wood (Sec. 793) states, and to point out the misleading character of statement that a court of equity will “entertain complete jurisdiction in a proper case, where the bill and the proof make a proper case for equitable relief, etc.,” as made by Wood, supra.
In a sense, under the old practice, it may be said that courts of equity could grant preliminary equitable relief; and could grant relief when the injury was irreparable. And it could grant permanent relief after the rights of parties had been determined in a court of law.
The statement, therefore, that courts of equity have concurrent jurisdiction with courts of law over nuisances does not mean that a party may go into equity or law by choice regardless of the kind of a case one may have. The condition precedent of resort to equity under the old as well as the present procedure was, and is, that plaintiff must show irreparable injury in order to invoke equitable jurisdiction.
This has ever been the rule, and is now the sole basis of the right to proceed in equity by preventative or mandatory injunction.
13, Ohio Decisions.
Statement has been made that we are exploring virgin ground in this matter so far as concerns our own decisions. Rather may it be said that our courts have not dwelt at length or gone into the difficulties connected with the subject, nor of the practicability of observing the distinction between the kinds of nuisances, and the correct foundation thereof. It is common practice for litigants to file a petition for injunction without setting forth the facts which will show whether plaintiff will suffer irreparable injury unless granted relief by way of in *464 junction. Little concern seems to be given tlie essential distinction between the kinds of nuisances in practice, especially in pleading.
The earlier decisions gave effect to the primary essential that “equity will interfere” “where the injury is irreparable, going to the ruin or destruction of property”; that equity founds its jurisdiction on this principle, that it does not controvert the policy of the law. McCord v. Iker, 12 Ohio, 380 [1843] (before the Code). The cases of Goodall v. Crofton, 33 O. S., 271 (under the Code), 31 Am. Rep., 535, was founded upon the same ground of inadequacy of the remedy at law. The case of Valley Ry. v. Franz, 43 O. S., 623, uses language such as is found in decisions of other states which seek to class nuisances as permanent on erroneous grounds as when the injury “is done at once and to the full extent that the act will ever cause injury.” Crawford v. Rambo, 44 O. S., 279 (1886), held that the court may order the abatement of an embankment “where an adequate remedy in the way of damages can not be had.” This was a case of diversion of water; it is to be as sumed that the nuisance was abatable, though the opinion is silent on this subject. In Downs v. Clay Co., 9 C. C. (N. S.), 345, the court applied the rule that in case of a permanent nuisance and the damage could not be ascertained with reasonable certainty, and assessed in one sum, no injunction would be allowed, especially if it would be ruinous ito the business of defendant and of small benefit to plaintiff.
The eontinuable and abating character of a nuisance was recognized in Brewing Co. v. Schmitt, 1 C. C. (N. S.), 177. The measure of damages in case of permanent nuisance was held to be the difference in market value of the property before and after the nuisance. Brewing Co. v. Schmitt, 1 C. C. (N. S.), 177.
Judge Shauek in Iron Co. v. Hyland, 74 O. S., 160, 166, stated:
“Within this limitation (that equity will intervene only where legal remedies are inadequate) a court of equity will enjoin a continuous or recurring nuisance when it is of such *465 nature that there 'can be complete and adequate redress at law, and it should be conceded that to the adequacy of the legal remedy it is essential that the ease be of such nature that full indemnity may be recovered without a multiplicity of suits. It is said, and truly, that the equitable remedy of injunction is now no more favored than formerly, but this means only that the propriety of the, remedy is more appreciated and that courts of equity are more insistent that the legal remedy shall be in all respects adequate to justify the refusal of the injunction upon that ground. It does not mean that courts of equity have forgotten that they are adlministering a supplemental system, designed for the purpose of supporting the deficiencies of the law, or that this limitation upon their jurisdiction is immutably fixed by that purpose. * * * There is no such thing as an equitable nuisance. If the plaintiff has no cause of action at law * * * it can have none in equity, and the jurisdiction of the cotorts of equity must be determined by the usual test respecting the adequacy of the legal remedy. That nuisances are frequently enjoined results from the fact that they are frequently, if not usually, of such nature as to present one of the recognized grounds of equitable jurisdiction, that is, that the injury is irreparable by the processes of the law or that a multiplicity of suits would be required at law to obtain redress. ’1
In Louisville Brick & Tile Co. v. Calmelat (28 O. C. A., 356; 6 Oh. App. Rep., 435), the complaint was for nuisance by a brick, tile and clay product plant from which smoke, soot, cinders and gas were constantly emitted upon plaintiff’s land and interfered with plaintiff’s comfort. The opinion shows no special consideration of the principles of distinction between permanent and continuous nuisance. The chief question seemed to be one of limitation. The court said:
“If it is what, in law, is known as a permanent nuisance then the cause of action arose, etc.”
The opinion quoted from the petition describing the injury which makes claim only for rental value within the period of four years, and the court concludes therefrom that the same presents a claim for a permanent trespass or nuisance for which but one action for damages can be named. With due respect *466 for our friends of that court there is nothing found in the report of the case by which to determine whether it was a permanent or continuing nuisance. City v. Hunt, 19 C. C., 486, recognized the distinction between nuisances and the correct measure of damages for each form of nuisances.
There can be no doubt concerning the rule in this state, that resort can be had to equity in cases of continuing nuisance on the ground of multiplicity of actions, or in any case of nuisance because of the inadequacy of the remedy at law.
14. Laches and Balancing Injury.
Defendant raises the question of laches and balancing of injuries. There is no necessity for a decision of this question at this time, but the .following observation is made.
However it is held that when a party is engaged in a lawful business, which is a nuisance to plaintiff, but plaintiff has been guilty of laches in standing by until after defendant has expended a large sum of money, it is held that the court may balance the injury and deny the injunction. McCleary v. Highland Boy Gold Mining Co., 140 Fed., 951; Brokaw v. Carson, 74 W. Va., 340; Herr v. Cent. Ky., Lunatic Asylum, 110 Ky., 282; Knoth v. Manhattan R. Co., 187, N. Y., 243; Galveston, etc., R. Co. v. De Groff, 102 Tex., 423; 21 L. R. A. (N. S.), 749.
In the following eases injunctions were refused because of the greater injury which would be suffered by defendant. Bently v. Empire P. Cement Co., 48 Misc. Rep., 457, 96 N. Y. Supp., 831; Raymond v. Transit Development Co., 65 Misc. Rep., 70, 119 N. Y. Supp., 655; Downs v. Clay Co., 29 Okla., 329; Lewis v. Pingree, etc., Bank, 47 Utah, 35, 35 L. R. A., 1916 C. 1260.
Pomeroy’s Equitable Rem. Sec. 1945 (last Ed. 1919) states, quoting' — •
“We think it may be safely assumed that the rule in equity is, that where the damages can be admeasured and compensated, equity will not interfere where the public benefit greatly outweighs private and individual inconvenience.”
*467 Daniels v. Waterunks, 61 Iowa, 549, and a large number of eases cited.
There are, however, strong eases to the contrary. Townsend v. N. R. & L. Co., 105 Va., 22, 115 Am. St., 842.
The question of balancing injury has frequently and recently arisen where injunctions were sought against mines and smelters. Injunctions have been refused because it would result in closing large plants, and would inflict great loss on the defendants, their employees and communities dependent upon them, and where the damage to plaintiff was relatively small and of ascertainment. Bliss v. Copper Min. Co., 167 Fed., 342; affd. in Bliss v. Copper Co., 186 Fed., 789, 109 C. C. A., 133; McCarthy v. Bunker Hill, etc., Co., 164 Fed., 927, 92 C. C. A., 259; Copper Co. v. U. S., 142 Fed., 625, 73 C. C. A., 621 (injunction denied in suit by federal government).
On the other hand injunctions were granted in the following cases. Am. Smelt. & Ref. Co. v. Godfrey, 158 Fed., 225, 14 Ann. Cas., 8; 89 C. C. A., 139; McCleery v. Gold Min. Co., 140 Fed., 951; Georgia v. Tenn. Copper Co., 206 U. S., 230; Arizona Copper Co. v. Gillespie, 12 Ariz., 190; People v. Smelter & Lead Co., 163 Cal., 84, Ann. Cas., 1913 E. 1267.
15. Conclusion.
In conclusion, what order should be made concerning the objections raised by counsel for defendant,
Pleadings must be founded upon a definite theory; the petition should aver facts which will disclose plaintiff’s theory, whether the nuisance claimed be continuing or permanent.
This is necessary to determine whether plaintiff has pursued his proper remedy; whether he is entitled to a permanent injunction. Plaintiff has not stated sufficient facts to disclose that his legal remedy is inadequate; he has not stated sufficient facts to show that the nuisance is -continuing.
The nature of a cause of action is determinable from the facts alleged, not by allegations of conclusions — as that an injury is irreparable — nor is it to be shown by the prayer of the petition. The petition is deficient in this respect.
*468 If the nuisance is permanent, plaintiff’s remedy at law is adequate because he can recover the difference in the market value before and after the nuisance.
If the nuisance is permanent, and there is a peculiar value in the property not measured by pecuniary award, and th,e owner can not get other property that will serve his purpose, the law sometimes takes this into consideration. No facts are now alleged to raise such question.
A party who recovers all that he is damaged by a nuisance, which he can do in the case of a permanent nuisance, should not be allowed to assume the position, as some English decisions have done, viz., Dent v. Auction Mart. Co., L. R. 2 Equity 238, 246, 247, to seek relief because unwilling to take any compensation, and unwilling to submit the question to a jury, but insist'ing upon the right to determine the value of his own property;
Some decisions have been based upon the idea that one who builds a structure, factory or plant, which becomes such a nuisance that its maintenance and continuance amounts to a virtual taking; this the constitution forbids. This is not sound.
The court concludes upon hearing the statements of counsel and upon consideration of ’the petition that the same does not state a cause of action for the reason that it is not founded on a definite theory. Leave granted plaintiff to amend his petition.